STATE v. ALBERT WHITFORD.

*Marriage—Effect of the act of 1866.*

The marriage act of 1866, ch. 40, validates a marriage celebrated between a man and woman at the time they were slaves, and makes the living together as man and wife after emancipation and up to the date of ratification of the act, evidence of the parties' consent. Nor can such marriage be avoided by a failure to have an acknowledgment of the same entered of record.

(*State* v. *Harris*, 63 N. C., 1; *State* v. *Adams*, 65 N. C., 537, cited and approved).

INDICTMENT for bigamy, tried at Spring Term, 1880, of CRAVEN Superior Court, before *Gudger, J.*

The evidence offered by the state and objected to by the defendant, was, that the defendant before emancipation was a slave of a Mr. Whitehurst; that Dinah Hancock was also a slave of a Mr. Hancock, and while so being slaves they went before a colored preacher, who was also a slave, and in the presence of a large crowd joined hands and the marriage ceremony was performed by said preacher. From that time, which was in the year 1857, they have cohabited and lived together as man and wife until the year 1880. It was further proved on the part of the state by the testimony of Alexander Bass, that he was a justice of the peace for Craven county; had known the defendant and Sylvia Bryant three or four years, and that on the 24th day of March, 1880, he married the defendant and Sylvia Bryant under a license issued to him by the register of deeds of Craven county. The license was produced and read before the jury.

The defendant requested the court to charge the jury:

1. That if the jury should find that no consent was given to marriage since ratification of the act of 1865–'6, the defendant must be acquitted.

2. That if the jury should find that no consent was given to marriage since the slaves were emancipated, the defendant must be acquitted.

The court declined to give these instructions, and charged the jury that if they should find from the evidence that the defendant and Dinah Hancock were married while they were slaves, according to the forms then prevailing, and after their emancipation continued to cohabit and live together as husband and wife, until this year, (1880) that would be a valid marriage between the defendant and Dinah, and if the defendant on the 24th day of March, 1880, was married to Sylvia Bryant, and Dinah Hancock was living at the time of said marriage to Sylvia, (as charged in the indictment) the defendant would be guilty.

The defendant excepted to the charge and the refusal of the court to give the instructions asked. There was a verdict of guilty, a new trial refused, and judgment pronounced, from which the defendant appealed.

*Attorney General*, for the State.
*Mr. William W. Clark*, for defendant.

ASHE, J. The correctness of the charge to the jury depends upon the question whether the marriage celebrated between the defendant and Dinah Hancock, while they were both slaves, was a valid marriage.

The indictment is preferred under the 5th section of the act of 1866, ch. 40, which reads: "That in all cases where man and woman, both or one of whom were lately slaves and are now emancipated, now cohabit together in the relation of husband and wife, the parties shall be deemed to have been lawfully married, as man and wife, at the time of the commencement of such cohabitation, although they may not have been married in due form of law."

And the act proceeds to require such persons to acknowl-

edge the fact of such cohabitation before the clerk of the county court, or a justice of the peace, and the time of its commencement, and that an entry of the same shall be made in a book kept for the purpose, which entry shall be *prima facie* evidence of the allegations therein contained ; and the 6th section makes the failure to have the acknowledgment recorded, in a specified time, a misdemeanor punishable at the discretion of the court.

The defendant contends that there was error in refusing to give the instructions. asked, the substance of which is, that if the jury should find that no consent to the marriage was given, either since the emancipation or since the ratification of the act, the jury should acquit. It was intended by asking these instructions to raise the constitutional question, urged by the defendant, that the original marriage of slaves was void, for as slaves, they were incapable of making a contract, and marriage by our law is a civil contract; therefore, a marriage between such persons was void, and that while the legislature may render valid an act which is void on account of some formal defect, they have no power to validate a contract void for the want of consent. However this may be, as an abstract proposition, we do not think that question is presented by the facts of this case, and we therefore do not undertake to discuss, or decide it.

The evidence in the case, in our opinion, does not warrant the instructions asked. There was no evidence offered before the jury from which they would have been justified in drawing the conclusion, that no consent had been given to the marriage between the defendant and Dinah ; but on the other hand, there was ample evidence, all that the law required, to establish the fact that consent had been given to the marriage, and upon the statement of facts as laid before the jury the charge of the judge was consistent with the law, as declared by the legislature and expounded by this court.

The act makes the cohabitation and living together *as man and wife*, after emancipation, and continued up to the time of the ratification of the act, evidence of the consent; if so, surely the continuing cohabitation and living together in that relation, after ratification for several years, with a full knowledge of the existence of the act and its purpose, must be held to be plenary evidence of a *consent* to the marriage.

In the case of *State* v. *Harris*, 63 N. C., 1, where the question arose as to the competency of a female witness who while a slave had cohabited with the defendant *as man and wife*, and after emancipation they had continued the relation and complied with all the requirements of the act, Mr. Justice READE, speaking for the court, said : " The substance of marriage, the *consent* of the parties, existing, it was as clearly within the power of the legislature to dispense with any particular formality, as it was to prescribe such. This neither made nor impaired the contract, but gave effect to the parties' *consent*, and recognized as a legal relation that which the parties had constituted a natural one. So that by force of original consent of the parties while they were slaves, renewed after they became free, and by the performance of what was required by the statute, they became to all intents and purposes man and wife."

This case differs from ours, in that, there was there an acknowledgment of record of the fact of cohabitation and its commencement, as required by the statute. But in a more recent decision of this court, it has been held that an entry of the acknowledgment is not essential to the consummation of the marriage, and that a marriage constituted by operation of the act, cannot be avoided by a failure to have the acknowledgment entered of record. *State* v. *Adams*, 65 N. C., 539.

This, in our opinion, is the only construction which can be legitimately given to the act, for it expressly declares

that under certain circumstances of cohabitation, &c., *the parties shall be deemed to have been lawfully married as man and wife at the time of the commencement of such cohabitation,* although they may not have been married in due form of law. The act then proceeds: And all persons whose cohabitation is hereby ratified into a state of marriage shall go before the clerk, &c., and acknowledge the fact of such cohabitation and the time of its commencement; and such entry shall be *prima facie* evidence of the allegations therein contained; and on failure to have the marriage recorded before the 1st of September, 1866, they shall be deemed guilty of a misdemeanor, and their failure for each month thereafter shall constitute a separate and distinct offence. According to the very words of the act, it is a duty to be performed after the cohabitation is ratified into a state of marriage, and the parties are deemed guilty of a misdemeanor if they fail to have their marriage recorded. The marriage was a thing complete before this duty was to be performed. The requirement of having an entry made of the fact of cohabitation and its commencement, was no doubt intended for the benefit of the issue of such marriages, as might have been born after the commencement of the cohabitation, to perpetuate the evidence of their legitimacy.

There is no error. Let this be certified.

No error. 　　　　　　　　　　　　　　　　　Affirmed.