STATE v. JOHN GASKINS et al.

*Murder—Judge's Charge.*

1. Where two conspire to kill or inflict grave bodily injury on a third person, and in carrying out this purpose, one of them fires a pistol at such person, who immediately pursues them and kills the one who did not fire the pistol, it is manslaughter.

2. Where a defendant asks a special instruction to the jury upon an aspect of the case which is presented by the evidence, which the Court does not give, it is error, and entitles the defendant to a new trial.

Indictment for MURDER, tried before *Gudger, Judge,* and a jury, at Spring Term, 1885, of the Superior Court of PITT county.

The appellants and Henry Speight and Granville Slade were indicted for the murder of one Nixon Moore.

At the close of the evidence, the Solicitor for the State consented to a verdict of not guilty as to Granville Slade; and a verdict for manslaughter was by consent rendered as to Henry

Speight. A verdict for murder was rendered against the appellants John Gaskins and Parker Gaskins.

The Solicitor for the State and the counsel for the appellants having failed to agree upon the case for this Court upon appeal, the presiding Judge settled the same, and the material part thereof is as follows:

"W. S. Fleming, a witness on the part of the State, testified that he was at his store near Greenville on the night of the homicide, which was the 4th of October last; that in the early part of the night there was a wrestling match between Henry Speight and one Church Moore, the father of the deceased, in which Moore was thrown and his ankle sprained. That after the wrestling, there were some angry words between some of the defendants and Church Moore's two sons, Nixon Moore (the deceased) and Joe Moore. That soon thereafter, at the invitation of Church Moore, the parties drank some whisky together, and they appeared to be friendly. They then came out of doors into the road a short distance from the store, and a dispute arose between the deceased and his brother Joe on one side, and the four defendants on the other. That Henry Speight proposed to wrestle again, but Church Moore objected, and Granville Slade said, 'Wrestle, Church, d——n it, nobody shall bother you.' He said this laughingly. That the deceased and his brother Joe stepped off to one side and held their heads near together, as if talking. About this time Granville slapped his hands on Speight's shoulder, and proposed that they go home. About this time Nixon Moore (as one witness thought) fired a pistol at Speight, the ball slightly cutting the flesh of Granville Slade's hand, which was at that time resting on the shoulder of Henry Speight. The witness could not state positively which of the brothers fired the pistol, but thought it was the deceased. The witness further testified, that as soon as the pistol fired, the two brothers, Joe and Nixon, ran down the road, and the four defendants named in the indictment ran after them, Speight saying, 'God d——n him, let's kill him.' I walked in the house, spoke to Mr.

Harrington, and came back to the door, and heard a noise as of fighting and cursing. In about five minutes Nixon came running back, saying, 'Mr. Fleming, Mr. Fleming,' and said he was cut, and lay down by his father. Soon John Gaskins came with a knife in his hand, and said with an oath, 'I have a mind to kill you,' and drew his knife up. That the distance to where the struggle occurred was 140 yards from the store. That the other defendants came back with John Gaskins, and that Nixon Moore died in a few minutes after he lay down. Mr. Harrington sold the knife to John Gaskins that evening. The witness got the knife from John Gaskins when he was arrested, and the knife had stains of a reddish color resembling blood on it.

. "Fred. Fleming, a State witness, testified that it was Joe Moore who fired the pistol, that when they came back from the scuffle, Parker and John Gaskins were together, and Parker had a knife in his hand, and was cursing. John Gaskins went to where deceased was lying and said with an oath, 'If I knew you had fired the pistol, I would cut you to death.'

"It was in evidence that when Parker Gaskins was arrested the next morning, there was blood on his person. He said that his nose was bleeding, but the blood was dry. There was evidence tending to show that Church Moore and his two sons and the defendants were strangers. It was in evidence that no pistol was found about the deceased or on the road between the place of the fight and the store, or at the place of the fight. It was further in evidence, that Joe Moore did not return to the store that night, and that for some time before the trial he had absented himself from his house.

"James Allen, for the State, testified, that John Gaskins the next morning after the killing, showed him a knife, and said "I cut him the night before. I did not know who the man was." The knife he showed witness was bloody and gapped. Dr. F. W. Brown, who was admitted to be an expert, testified, that he examined the body of the deceased at the coroner's inquest, and found two wounds on the body, one a contused wound, a half

inch long on the right side of the head, the other an incised wound on the left side, between the third and fourth ribs, cutting into the cavity of the body and cutting the front lobe of the left lung, and the intercostal artery. His opinion was, the deceased died from the last wound.

"The defendants requested the Court to charge the jury, that if they believe that the four persons whose names are included in the indictment and charged with murder, were all standing together talking, that the deceased and his brother acting in concert and by agreement, came up within a few paces, and without warning to the defendants, fired a loaded pistol into the crowd and immediately ran down the road, that the prisoners immediately pursued their assailants, and overtook them at a distance of one hundred and forty yards, and a struggle commenced in which the deceased was killed, that the prisoners immediately returned to the place where the pistol was fired, and the whole transaction did not cover a greater time than five minutes, then the defendants would only be guilty of manslaughter.

"In response to this request, the Court charged that if the pistol was fired by Joe Moore, and not by the deceased, that the killing would not be reduced to manslaughter, and there was some evidence that Joe Moore fired the pistol, and no evidence of an agreement, combination or conspiracy between the deceased and his brother to fire at the crowd. The prisoners, John and Parker Gaskins, excepted to the charge as given and the refusal of the Court to charge as requested."

The jury rendered a verdict of guilty. Rule for a new trial for misdirection. This rule was discharged. There was judgment of death, and the prisoners appealed to this Court.

The *Attorney General*, for the State.
*Mr. Aug. M. Moore*, for the defendants.

MERRIMON, J. (after stating the facts). Taking all the facts and circumstances in evidence together, as they naturally bear upon each

other, and the reasonable implications arising upon them, we think there was some evidence before the jury tending to prove the aspect of the case suggested by the special instruction prayed for by the appellants.

The leading facts are, that the appellants, and the other persons indicted with them, on one side, and the deceased and his brother on the other side, quarreled, the quarrel having its origin about the father of the latter, who was present, and who had very shortly before that received some injury in a wrestle with Speight, that gave rise to angry words; that just as the quarrel seemed to have ended, and Speight proposed to one of his comrades to go home, the deceased and his brother held a conference apart from the appellants and the others, and the deceased, or his brother, immediately fired the pistol at Speight—it may not unreasonably be inferred, at the crowd—and hit Slade on the hand, tearing the flesh ; that the deceased and his brother at once ran off down the road ;—these and other facts of minor import, certainly constituted some evidence of concert of action on the part of the deceased and his brother. Their passions were aroused, and they seemed to make common cause against the appellants and their comrades. There was some evidence of the concerted purpose.

Of course, the jury must determine its weight—they might deem it sufficient to prove the combination—they might deem it insufficient.

The instruction given by the Court in response to the special prayer was therefore erroneous. If there was a concerted purpose on the part of the deceased and his brother to assault the appellants and the two others indicted with them, then it made no difference which of the two fired the pistol. The Court instructed the jury that if the surviving brother fired the pistol, the offence would not be mitigated to manslaughter. This was error. If the jury were satisfied that there was concert on the part of the brothers to assault the appellants, then the case would have been one of manslaughter; if the deceased had fired the pistol, as seems to have been conceded, then it would still be that grade of offence, although the surviving brother fired it.

Where the prisoner prays for a special instruction, and he is entitled to have it, or the substance of it, given, or to have it qualified and given, and the Court fails to give it, or the substance of it, or, giving it with modification, errs in his charge, this is ground for a new trial.

The appellants are entitled to a new trial. To that end let this opinion be certified to the Superior Court according to law.

Error.                                         Reversed.