THE STATE v. JOHN W. DAVIS.

*Bigamy—Indictment—Evidence—De facto Officer—Juror, Qualification of—Variance—Instructions to Jury.*

1. To disqualify a juror of the regular panel for non-payment of taxes, it must appear that the failure to pay the taxes was for the fiscal year preceding the annual revision of the jury list, at which such juror was drawn.

2. Upon the trial of an indictment for bigamy, it was not error to refuse to charge the jury that they could not convict unless they were satisfied, beyond a reasonable doubt, that the magistrate who solemnized the first marriage was duly appointed and qualified; it was sufficient proof of his official character to show that he was an officer *de facto.*

3. It is not necessary, in an indictment for bigamy, to set out the name of the first wife, nor to negative that she had been divorced from defendant.

4. The indictment charged the marriage to have been to Dixie Marshall, and the evidence showed her name to be Lee Emma Dixie Marshall: *Held,* to be no variance, as there was evidence that she was known to defendant and others by the name given in the bill.

STATE *v.* DAVIS.

5. The evidence showing that there were a number of eye-witnesses to the marriage, and a certified copy of the license with return endorsed being produced, it was not error to charge the jury that it would be presumed the ceremony was valid.

6. An indictment for bigamy which charges that defendant " wilfully, unlawfully and feloniously, being a married man, did marry one W. during the life of his first *wife*," sufficiently avers the first marriage.

INDICTMENT for bigamy, tried at Fall Term, 1891, of ASHE Superior Court, *Bynum, J.,* presiding.

*The Attorney General,* for the State.
*Mr. W. H. Bower,* for defendants.

CLARK, J.: The challenge to the juror was properly overruled. The cause was tried at August Term, 1891, of Ashe Superior Court. The regular jurors were, therefore, drawn from the list revised by the Commissioners at their session on the first Monday in September, 1890. They could not then have thrown out a juror for " not having paid his taxes for the fiscal year ending June, 1890," since that tax list did not go into the Sheriff's hands before such meeting in September, 1890, Acts 1889, ch. 218, § 39. The Commissioners of the county were required to revise the list in September, 1890, by selecting the names of such persons of good moral character and of sufficient intelligence as shall " have paid tax for the preceding year," *i. e.*, the fiscal year ending June, 1889. This has often been decided. *State* v. *Carland,* 90 N. C., 668; *State* v. *Haywood,* 94 N. C., 847; *Sellers* v. *Sellers,* 98 N. C., 13; *State* v. *Gardner,* 104 N. C., 739. The Act of 1889, ch. 559, cannot affect the case whether that act, which provides for a quadrennial instead of an annual revision of the jury list, be held not to take effect till 1892, or shall be construed to also forbid annual revision between the date of the act and 1892, since in the latter case it would

merely make the revision of 1888 valid till 1892, and could not disqualify a juror for not having paid his taxes for the fiscal year 1890.

The second, third and fourth prayers for instructions, which were refused, each contained the proposition that the defendant could not be convicted unless the jury was satisfied beyond a reasonable doubt that the magistrate who solemnized the first marriage was "a duly appointed, qualified and acting Justice of the Peace." They were, therefore, properly refused. It was sufficient to show that such Justice was a *de facto* officer. It was not essential to show that he was "duly appointed and qualified." There was, therefore, no error in refusing the fifth prayer as to the presumption of such magistrate being out of office until shown he was again "lawfully inducted into office." In *State* v. *Robbins*, 28 N. C., 23, which was an indictment for bigamy, it is said, "In the case of peace officers and Justices of the Peace it is sufficient to prove that they acted in those capacities even in case of murder." In that case, as in this, the marriage was solemnized by a person who had been acting openly and notoriously before and after the marriage as a Justice of the Peace, and it was held that it was to be taken that he was at such time a Justice "until the contrary be shown." In *Burke* v. *Elliott*, 26 N. C., 355, it was said by RUFFIN, C. J., " Hines, whether regularly appointed or not, was acting in the office of constable at the time and had been for six months before, and therefore his acts in office were valid. It is a settled principle that the acts of officers *de facto* are as effectual, as far as the rights of third persons or the public are concerned, as if they were officers *de jure*. The business of life could not go on if it were not so." In *Gilliam* v. *Reddick*, in the same volume, 368, the same eminent Judge speaks of this principle as "a well settled and ancient rule of law." These cases have always been followed and never questioned, but we need not quote further than the recent case of *State* v.

*Lewis,* 107 N. C., 967, in which the subject was reviewed with a wealth of authorities by Mr. Justice AVERY. In the present case, the evidence of the alleged Justice having acted as such openly and notoriously for a long period before and after the marriage was plenary and uncontradicted. The evidence offered by the journals of the Legislature to show that his name did not appear among the Justices of the Peace elected by that body, did not show even that he was not a Justice *de jure,* since Justices of the Peace in certain cases are appointed by the Governor, and in others by the Clerk of the Superior Court.

The sixth prayer for instruction was: " If you find from the evidence that the name of the woman to whom the defendant is alleged first to have been married is Lee Emma Dixie Marshall, the bill of indictment charging that he was married to Dixie Marshall, it is a variance that is fatal." This the Court gave, but added, " unless you find that she was known as Dixie Marshall, and was so known and acknowledged and married by defendant." There was ample evidence to show that she was known as Dixie Marshall, and there was no error in this of which the defendant could complain. Indeed it was not required to allege the name of the first wife at all, Whart. Cr. Law, 1714, and cases there cited. On a motion for a new trial the defendant further excepted, because the Court instructed the jury that if the marriage " license was exhibited to the Justice, it would be presumed that the ceremony was regular and fulfilled the requirements of the law," and that there was no evidence that such license was exhibited to him. There were eye-witnesses who testified to the marriage, and a certified copy of the marriage license, with the usual certificate, filled up by the Justice who had married the defendant, was in evidence. We find, therefore, no error in this instruction. The second ground of error assigned on the motion for a new trial is, in effect, that the burden was on the State to fully satisfy the jury that the

Justice who married the defendant was a Justice of the Peace *de jure* " duly appointed." This has already been disposed of.

The defendant also assigned as error that the Court failed to instruct the jury that if they had, on the whole evidence, a reasonable doubt whether the alleged Justice of the Peace at the time of the first marriage was a " duly qualified Justice of the Peace," or " whether at the time of the second marriage defendant was of sufficient mental capacity to know the nature and consequence of his acts," they should return a verdict of not guilty. The Court, instead, charged that " the burden was on the defendant to satisfy the jury, but not beyond a reasonable doubt, that he had not sufficient mental capacity to know right from wrong, and if they were so satisfied, they would acquit;" otherwise, they would proceed to consider the other questions presented. In this there was no error. *State* v. *Haywood,* 61 N. C., 376 ; *State* v. *Payne,* 86 N. C., 609.

The defendant further moved in arrest of judgment, " for that the indictment does not sufficiently aver the first marriage, but alleges it, if at all, by way of recital only." The indictment in this respect charges that the defendant " wilfully, unlawfully and feloniously, being a married man, did marry one Emma V. Warren during the life of his first wife Dixie Davis, whose maiden name was Dixie Marshall, he, the said John W. Davis, then and there well knowing that his said first wife was living, and he, the said John W. Davis, not having been at the time of his second marriage lawfully divorced from his first wife." The allegation is in substantial compliance with the statute, *The Code,* § 988, and is warranted by the precedents. Indeed, it was not necessary to negative the divorce. *State* v. *Norman,* 13 N. C., 222.

*Per curiam.*                                         No error.