STATE v. ALLEN MELTON.

*Indictment for Bigamy—Bigamy—Evidence— Wife Competent Witness to Prove Marriage—Record of Marriage—Admissions— Witness—Slave Marriages—Exception.*

1. In an indictment for bigamy the first wife of the defendant is a competent witness to prove the marriage, public cohabitation as man and wife being public acknowledgments of the relation and not coming within the nature of the confidential relations which the policy of the law forbids either to give in evidence.

2. The record book of marriages for the county is admissible to prove a marriage.

3. The original marriage license signed by the justice solemnizing the marriage is admissible to prove a marriage, though neither the justice nor the witnesses attesting the certificate as being present at the marriage are present in court.

4. In the trial of an indictment for bigamy, the admission by defendant of his former marriage is competent evidence against him, though such statement may have referred to the relations which he and his former wife sustained to each other, as man and wife, in slavery times.

5. Where a defendant charged with bigamy, upon the preliminary examination before a justice of the peace, and after being cautioned that his statements could be used against him, stated that he had been married to his former wife while a slave in South Carolina, had children by her and was subsequently married in North Carolina to his present wife, such admissions were competent to go to the jury, on his trial in the Superior Court, as to his guilt.

6. Where, on the trial of a defendant for bigamy, one witness testified that defendant had been married to his first wife thirty-nine years and had admitted two years before the trial that he had another wife living, and it appeared that the defendant had testified on the preliminary examination before a justice of the peace to such first marriage while he and she were slaves, it was proper to refuse an instruction that, on the evidence, the jury could not convict.

7. Where persons were married while slaves and continued to live together as man and wife after the abolition of slavery, they were, by virtue of Ch. 40, Acts of 1866, legally married and no acknowledgment before an officer was necessary.

8. An exception "to the charge as given " is invalid and will not be considered.

9. An indictment for bigamy need not contain an averment that the defendant had not been divorced from his first wife, since that is a matter of defence.

FAIRCLOTH, C. J., and DOUGLAS, J., dissenting.

INDICTMENT for bigamy, tried before *Coble, J.,* and a jury, at January Term, 1897, of ANSON Superior Court.

*Mr. Attorney General Zeb V. Walser,* for the State.
*Mr. R. T. Bennett,* for appellant.

CLARK, J.: In an indictment for bigamy the first wife is a competent witness to prove the marriage. *The Code,* Section 588; *State* v. *McDuffie,* 107 N. C., 885, 890. Indeed, marriage and public cohabitation as man and wife are pubilc acknowledgments of the relation and do not come within the nature of the confidential relations between them which the policy of the law has always forbidden either to give in evidence. This disposes of the first four exceptions.

The fifth exception to proving the second marriage by the record book of marriages for the county is not well taken. The same is true of the sixth exception, which was to the admission of the original marriage license signed by the justice solemnizing the same, nor was it necessary that

the said justice, nor the witnesses attesting the certificate as being present at the marriage, should be in court. The "witnesses of the law," who must be in court, or their absence accounted for, are the subscribing witnesses to a deed, bond or will, and that is because they are selected to prove the execution of such instrument. But here it is not the execution of the certificate which is to be proved. The certificate filed in the Register's office and the registration thereof are both record evidence of the marriage, and the regularity is presumed from such evidence till "the contrary be shown." *State* v. *Davis*, 109 N. C., 780.

The seventh exception was that a witness testified that "the defendant and Harriet Melton were married about 39 years; that they were married about five miles from Chesterfield, C. H., South Carolina: that about two years ago the defendant stated he had another wife, his present wife being present at the time; that defendant and Harriet Melton were slaves when they were married." The admission by the defendant of his former marriage is competent evidence against him. *State* v. *Wylde*, 110 N. C., 500, and numerous cases there cited. In the preliminary examination before the justice the defendant asked to be allowed to testify, and the justice, having given him the ordinary caution and also having told him that whatever he would say could be used against him in a higher court, the defendant testified that he had been married in Chester county, S. C., to Harriet Melton while they were slaves and had raised some children by her, and that in 1894 he married Delia Ann Teel in North Carolina. These admissions were competent to go to the jury. *State* v. *Wylde*, *supra*, 2 Am. and Eng. Enc., 196, and cases cited.

The defendant prayed the court to instruct the jury "that the marriage of the slaves and their living together in the relation of husband and wife while in a state of

120—75

slavery, did not constitute the relation of husband and wife in North Carolina; that the omission of the State to introduce any evidence of the law in South Carolina before the jury leaves the jury to be governed by the decisions and laws in this State, and by that law this marriage in South Carolina was not a valid one; that upon the whole evidence in this case the State cannot convict." The defendant excepted to the refusal of this prayer. If any part thereof was incorrect, it was not error to refuse it.

The witness, Streator, having testified that the defendant two years ago admitted, in the presence of his second wife, that he had another wife living, this admission was competent to submit to the jury, who will "determine whether what he said was an admission that he had been legally married." *Regina* v. *Simonds*, 1 Car. and Kir., 164, and *Miles* v. *U. S.*, 103 U. S., 304, and other cases cited in *State* v. *Wylde, supra*. This admission does not specify the name of the first wife, nor does the indictment set out her name and it is not necessary that it should. *State* v. *Davis*, 109 N. C., 780; Wharton Cr. Law, 1714, and cases there cited. It was, therefore, not error to refuse a prayer which contained the instruction "that upon the whole evidence the State cannot convict."

The witness, Streator, testified that the defendant and Harriet Melton had been married 39 years, and that defendant two years ago admitted, in the presence of his second wife, that he had another wife living, and the defendant before the magistrate testified that he had married said Harriet in South Carolina while they were slaves and had raised several children by her. The prayer for instruction is further erroneous in that it asked the court to charge that such a marriage was invalid in North Carolina. There was ample evidence to justify the jury in finding that the cohabitation continued after 1866, for there was further

evidence that they "lived together many years and had several children;" that two years ago he admitted having another wife, and also evidence from the defendant tending to show that the marriage was between 1861 and 1865. Indeed, the relation having begun is presumed to continue till evidence to the contrary, and persons married in North Carolina while slaves, who continued to cohabit after the abolition of slavery, were *ipso facto* legally married (Act 1866, Ch. 40) and no acknowledgment before an officer was essential. "The marriage was complete before the prescribed acknowledgment" made before the clerk, even if such acknowledgment were not made at all. *State* v. *Whitford*, 86 N. C., 636; *State* v. *Adams*, 65 N. C., 537; *Long* v. *Barnes*, 87 N. C., 329; *Jones* v. *Hoggard*, 108 N. C., 178; *Kirk* v. *State*, 65 Ga., 159. By these authorities, if the defendant and Harriet, having married in South Carolina while slaves, had cohabited in North Carolina after 1866, as there was evidence to show they did in South Carolina, they could not have been convicted of fornication and adultery, the validity of the marriage dated back to its inception and their children had all the rights of legitimates. Our Statute of 1866, owing to the peculiar status of slave marriages, adopted as to such marriages the rule which has long prevailed in Scotland, New York and several other States (and which was the rule of the civil law and of the Canon law till the Council of Trent), that consent, followed by cohabitation, constitutes a legal marriage. 14 Am. and Eng. Enc., 515. The defendant's prayer was, therefore, further erroneous in virtually asking the court to take the case from the jury by telling them that upon the facts in evidence they should find that there was no valid prior marriage "according to the laws and decisions of this State." If, in the absence of proof, marriage between slaves is to be deemed invalid in South Caro-

lina because invalid in North Carolina, for the same reason, in the absence of proof, the continued cohabitation of such parties after 1866 constituted legal marriage because such is the law here.

The exception to the "charge as given" has been uniformly and repeatedly held, indeed, in more than fifty decisions of this court, to be invalid. The Legislature has, besides, given the appellant in all cases ten days, after the adjournment of court, in which to ponder over and set out his assignments of error to the charge, though all other matters must be excepted to at the trial. *Lowe* v. *Elliott*, 107 N. C., 718; *Blackburn* v. *Ins. Co.*, 116 N. C., 821. When, after ten days allowed for specific exceptions to the charge, the only error assigned is "to the charge as given," at most we can only take the appellant as excepting to it because it did not contain his prayer, or for containing the opposite instruction, and no further; that is, he simply duplicates his exception for the refusal to charge as prayed. It was not necessary that the indictment should contain an averment that the defendant had not been divorced from his first wife, as that is a matter of defence, for though appearing in the section denouncing the offence (*The Code*, 988) it is in the *proviso* thereof. *State* v. *Norman*, 13 N. C., 222; *State* v. *Davis*, 109 N. C., 780.

No Error.


FAIRCLOTH, C. J., dissenting: I cannot assent to the conclusion of the court in this case. I do not question the competency of either wife to prove the fact of marriage. I do not doubt the competency of the defendant's admissions, whatever they are. I do not doubt that it is the province of the jury to determine the question of marriage under proper instructions *as to the law* arising upon the facts as shown by the evidence. My contention is that

when two aspects of a case are presented by the proofs, the court should "state in a plain and correct manner the evidence given in the case, and declare and explain the law arising thereon" (*The Code*, 413), and that he should do so upon each aspect of the case presented by the evidence.

"Where the evidence presents the case in two aspects, it is proper for the trial judge to charge the jury upon the law as it arises upon both aspects, and then leave the question of fact to be passed on by the jury." *Spence* v. *Clapp*, 95 N. C., 545.

"Where the evidence presents the case in two aspects, the trial judge should charge the jury in both aspects of the case." *State* v. *Gilmer*, 97 N. C., 429; *State* v. *Brewer*, 98 N. C., 607; *State* v. *Matthews*, 78 N. C., 523; *State* v. *Dunlop*, 65 N. C., 288; *State* v. *Cardwell*, 44 N. C., 245.

"Where a defendant asks a special instruction to the jury upon an aspect of the case which is presented by the evidence, which the court does not give, it is error, and entitles the defendant to a new trial." *State* v. *Gaskins*, 93 N. C., 547; *Bailey* v. *Pool*, 35 N. C., 404.

The common law of England was imported into all the States of this Union, and this court has repeatedly held that it is presumed to continue in such States until it is shown by proper evidence that it (the common law) has been changed by Statute. It is true that slavery was largely regulated by Statutes, especially the restrictions imposed on it, but still the common law applied to slaves in many respects. They were tried for murder and other high crimes according to the facts and upon the same common law principles of evidence as other classes. It was by the same law that their marriages were allowed no legal significance.

"The marriage of slaves in this State, consisting of cohabitation merely, by the permission of their owners, does

not constitute the relation of husband and wife so as to attach to them the privileges and disabilities incident to that relation by the common law. Hence it was held that a slave, who was the wife of another slave, might give evidence against him even in a capital case.'' *State* v. *Samuel*, 19 N. C., 177.

The State introduced Harriet Melton, who testified that she and the defendant were both slaves, and that they were married ''during slavery times'' in South Carolina; that after the marriage she lived with him, the defendant, many years in South Carolina and had children by him; that defendant was at the time of the marriage ''a slave for years thereafter.'' There was evidence, and it was admitted that in 1894 the defendant married Delia Ann Teel in North Carolina, and that about two years ago he said, in the presence of his last wife, that he had another wife. The justice of the peace was allowed to testify orally as to the trial before him, and said if his statement showed that defendant said he married Harriet between 1861 and 1865, it was true. Another witness said he knew the defendant and Harriet; that they were married as slaves in South Carolina; ''that they were married about 39 years.'' There was no proof, except by inference from the above, that the defendant and Harriet ever lived together or cohabited after slavery was abolished. By our Act 1866, Ch. 40, when emancipated slaves, who had previously lived in slavery as man and wife, should continue to live together in that relation, they should be deemed to have been lawfully married, and were punishable for failure to register their intention of so continuing. *The Code*, Section 1842.

There was no evidence received or offered, at the trial, of the law in South Carolina concerning the marriage relation of emancipated slaves, either before or since emancipation; nor was the jury instructed as to the law on the sub-

ject, but left to determine whether the defendant and Harriet Melton were "legally married" without any reference to their status before or after emancipation.

If there had been no legislation in South Carolina (and none was shown) on the present status of slave marriages, then the common law presumption remains, and perhaps the defendant in that State, instead of being a husband, was guilty of fornication and adultery, if cohabitation continued after he became a freeman.

The defendant asked for this special instruction: "That the marriage of slaves and their living together in the relation of husband and wife while in a state of slavery did not constitute the relation of husband and wife in North Carolina; that the omission in this case, on the part of the State, to introduce any evidence of the law of South Carolina before the jury, leaves the jury to be governed by the decisions and law in this State, and by that law this marriage in South Carolina was not a valid one; that upon the whole evidence in this case the State cannot convict." This was refused, and his Honor instructed the jury that "the State must satisfy them from the evidence beyond any reasonable doubt that the defendant *was legally* married to Harriet Melton as charged;   *   *   *   that the defendant was married to Harriet Melton, and that during the life of said Harriet he married Delia Ann Teel, then the jury will find the defendant guilty." The latter part of the instructions asked, being as distinct as if they had been numbered 1 and 2, is too general to be considered and may be disregarded.

The jury then had to consider and determine whether the defendant and Harriet were *legally* married. The fact that parties contract in marriage may be found by the jury, but whether the marriage is legal or not is for the court. The special prayer called attention to the fact of agreement

to marry and their relations in slavery, and it was important for them to know whether those facts constituted a *legal* marriage. They were not informed. They were not informed, even, what acts and facts after emancipation would constitute a legal marriage. When the defendant admitted he had another wife, did that mean his wife in slavery or his wife by continuance in the marriage relation after slavery, if there was any difference in South Carolina? That was for the jury, with proper directions from the court as to the law applicable to each condition. Suppose the jury thought the admission that he had another wife had reference to his slave wife, as he might naturally have done, still the jury were at liberty to find him guilty for aught that appears in the charge, and the refusal to give them the special prayer. The jury do not know and cannot know the law of South Carolina without the aid of the court on this or any other question.

I think his Honor should have explained the law on each phase of the question presented by the evidence. The element of slavery and its changes does not enter into the authorities relied upon by the court.

DOUGLAS, J.: I concur in the dissenting opinion of the Chief Justice.