Criminal prosecution tried upon indictment charging the defendants with bigamous cohabitation in violation of G.S., 14-183 (C. S., 4342). *Page 185 
The controlling facts as disclosed by the record are:
1. That the male defendant was married to Carrie Ora Wyke in 1916; that they lived together in Caldwell County, this State, as husband and wife for more than 23 years and reared a family of four children; that they have not lived together since the male defendant deserted his home on 7 May, 1940; that Carrie Ora Wyke Williams had brought no divorce proceeding against her husband at the time of the first trial of this cause in the spring of 1941, at which time she testified in the case, and that she is now dead.
2. That the feme defendant was married to Tom Hendrix in 1920; that they lived together in this State as husband and wife for more than 19 years; that no children were born of this marriage; that they have not lived together since the feme defendant deserted her home on 7 May, 1940; that Tom Hendrix had brought no divorce proceeding against the feme defendant prior to the first trial of this cause, at which time he testified in the case, but that he has since, and remarried.
3. That Tom Hendrix was working in the store of the male defendant at the time the defendants herein left the State; that the first knowledge he had of his wife's departure was "when he went home at night and she was gone."
4. That both of the defendants appeared at the Alamo Court, Las Vegas, Nevada, on 15 May, 1940.
5. That the male defendant instituted action for divorce in Clark County, Nevada, on 26 June, 1940, charging his wife with "extreme cruelty towards this plaintiff." Service of summons was obtained by publication, and no appearance was made by the defendant, Carrie Ora Williams, albeit notice was served on her by the sheriff of Caldwell County, North Carolina. A decree of absolute divorce was granted by the Nevada Court on 26 August, 1940, for cause set out in the complaint. I. S. Thompson appeared as counsel for plaintiff in the action.
6. That the feme defendant instituted action for divorce in Clark County, Nevada, on 26 June, 1940, alleging failure to support and "extreme mental cruelty" on the part of her husband. Service of summons was obtained by publication, and no appearance was made by the defendant, Tom Hendrix, though he sent plaintiff's counsel a post card saying that upon receipt of original appearance he would sign it. This he never did. O. B. Williams testified for the plaintiff in the case. He said the plaintiff had been living at the Alamo Court, Las Vegas, since 15 May, 1940, and that he had seen her every day while there. The plaintiff testified that she arrived in Clark County, Nevada, on 15 May, 1940, with intention of establishing an indefinite permanent residence. A decree of absolute divorce was granted by the Nevada court on 4 October, *Page 186 
1940, for causes set out in the complaint. I. S. Thompson appeared as counsel for plaintiff in the action.
7. That the defendants were married in the State of Nevada on 4 October, 1940, and shortly thereafter in the fall of 1940, returned to North Carolina and are now living together at Pineola, Avery County, N.C. A true bill was returned against them at the February Term, 1941, Caldwell Superior Court.
8. The case was tried at the February-March Term, 1941, Caldwell Superior Court, which resulted in verdict and judgments against the defendants, and these were upheld on appeal. 220 N.C. 445,17 S.E.2d 769. The judgment of affirmance was reversed on certiorari
to the Supreme Court of the United States, and the cause remanded for proceedings not inconsistent with the opinion filed therein.317 U.S. 287, 87 L.Ed. 279. The case was thereupon remanded for a new trial in accordance with the opinion of the Supreme Court of the United States, 222 N.C. 609, 24 S.E.2d 256.
When the matter was again called for trial at the November Term, 1943, Caldwell Superior Court, the defendants entered a plea of former jeopardy, and moved to dismiss on the ground that the judgment of affirmance had been "reversed" by the Supreme Court of the United States, and, therefore, the defendants were entitled to be discharged. Overruled; exception.
Verdict: Guilty as charged in the bill of indictment.
Judgments: Imprisonment in the State's Prison as to male defendant for not less than one nor more than three years, as to feme defendant for not less than 8 nor more than 24 months.
The defendants appeal, assigning errors.
This is the same case that was before us at the Fall Term, 1941, reported in 220 N.C. 445, 17 S.E.2d 769, with ample reference to pertinent statutes and full statement of the facts, to which reference may be had to avoid repetition.
The short and simple facts upon which the case was made to turn in the court below are these: For many years the defendants lived with their respective spouses in the village of Granite Falls, Caldwell County, this State. The feme defendant's husband worked in the store of the male defendant. The defendants disappeared from their respective homes on 7 May, 1940. Eight days thereafter they both appeared at the Alamo Court, Las Vegas, Nevada. Exactly six weeks later each filed suit for *Page 187 
divorce in Clark County, Nevada, on grounds recognized in that State, but not in this State. No appearance was made by the nonresident defendant spouse in either case. Service was by publication. Both defendants employed the same attorney. The uncontested divorces were granted on 26 August and 4 October, 1940, respectively. On the day of the last divorce, the defendants were married in the State of Nevada, and almost immediately thereafter they returned to North Carolina and have since lived together in this State. In all, they were out of the State about six months. The defendants were convicted of bigamous cohabitation at the February-March Term, 1941, Caldwell Superior Court, and judgments pronounced. The judgments were affirmed on appeal, and later reversed by the Supreme Court of the United States and the cause remanded for proceedings not inconsistent therewith.
Our former decision was predicated primarily upon the ground that the Nevada divorce decrees, here in question, were not entitled to full faith and credit in this jurisdiction, because they were obtained on constructive service and no appearance had been made in the divorce proceedings by the nonresident defendants named therein. For this position we relied upon the celebrated case of Haddock v. Haddock, 201 U.S. 562, and a number of our own decisions accordant therewith. Tyson v. Tyson, 219 N.C. 617,14 S.E.2d 673; Pridgen v. Pridgen, 203 N.C. 533, 166 S.E. 591; S. v.Herron, 175 N.C. 754, 94 S.E. 698. Aside from this, however, but secondarily, it was suggested that the evidence tended to show the defendants were not bona fide residents of the State of Nevada, and that they had fraudulently obtained their divorces in that State.
When the matter reached the Supreme Court of the United States oncertiorari the Haddock case was overruled. This removed the principal ground upon which our decision had been made to rest. The logical result, therefore, was a reversal of the judgment of affirmance. Williams andHendrix v. North Carolina, 317 U.S. 287, 87 L.Ed., 279, 143 L.R.A., 1273. Not finding it appropriate to do so, the court of last resort did not pass upon the further challenge to the divorce decrees, to wit, that the plaintiff in each case had acquired no actual, bona fide domicile in Nevada, and the proceeding was a sham and a fraud.
The contention is advanced that as the Supreme Court of the United States grounded its decision on the assumption the defendants had acquiredbona fide domiciles in the State of Nevada (the only occasion for overruling Haddock v. Haddock), based in part at least on concession of evidence to support such a finding, the assumption must continue throughout all subsequent proceedings, and that so far as the present prosecution is concerned, no further inquiry into the matter is permissible. The argument is that originally the prosecution assumed it might *Page 188 
assail the Nevada divorce decrees on one or two grounds: first, want of domicile in the divorce forum, Bell v. Bell, 181 U.S. 175,45 L.Ed., 804; and, secondly, want of effective service of process if domicile were established, Haddock v. Haddock, supra. Either showing, it was thought, would suffice to defeat the jurisdiction of the Nevada court. So, without contesting the question of domicile, the prosecution elected to stake its case in the Supreme Court on the second view, and lost. Consequently, it ought not to be permitted to go back now and challenge the defense on the first ground alone. Potts v. Ins. Co., 206 N.C. 257, 174 S.E. 123. This would be taking "two bites at the cherry." Dependents of Thompson v.Funeral Home, 205 N.C. 801, 172 S.E. 500. In short, the contention is that the assumption of domicile being necessary to reach the second view — the chosen battleground of the State — the fact of domicile is res judicata, and binding on the prosecution.
The conclusion is a non sequitur. Even if the jury had found the defendants were domiciled in Nevada, still under the doctrine of Haddock, the divorce decrees, since they were entered on constructive service, might have been, and in fact for this very reason were, held for naught in North Carolina. This, and this alone, is what the court of last resort overruled and "reversed." The record did not disclose a finding by the jury that the defendants had actually acquired bona fide domiciles in Nevada. Indeed, they may have found just the reverse. The verdict was a general one and there was evidence to support the State's challenge to the defense on the single ground of defective process or on the dual ground of no bona fide
domicile and no valid process, albeit the record indicated the latter as the basic cause for sustaining the challenge. The indefiniteness of the record in this respect, however, coupled with an admission which the State regarded as immaterial under the Haddock case, supra, induced the reversal of the judgment of affirmance. In other words, the legal theory upon which the State chiefly relied to defeat the defense set up by the defendants was disapproved. This did not perforce preclude further challenge to the defense on other grounds. It eliminated the second premise, but it did not work an acquittal of the defendants. An error in respect of the defense set up in a criminal action would not dispose of the indictment. Moreover, the concession was made in the appellate court. Had such admission been made by the solicitor in the trial court and acted upon by the jury, a different situation might have arisen. But that is another matter. 20 Am. Jur., 469. See S. v. Butler, 151 N.C. 672, 65 S.E. 993, 25 L.R.A. (N.S.), 169, 19 Ann. Cas., 402. To sustain the conviction and the judgment upholding it, the State was compelled to rely on the principle of the Haddock decision because it was the main theory of the trial. The issue was squarely joined. *Page 189 
The effect of the decision of the Supreme Court of the United States in this case is to preserve the sufficiency and effectiveness of constructive service of process in actions for divorce in proper cases of domicile. The pronouncement is that full faith and credit to such proceedings may no longer be denied in other states of the Union upon this ground alone. Speaking directly to the point, the majority opinion says: "So when a court of one state acting in accord with the requirements of procedural due process alters the marital status of one domiciled in that state by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause because its enforcement or recognition in another state would conflict with the policy of the latter."
The issue of domicile was expressly left open, as witness the following from the opinion: "Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no bona fide domicile was acquired in Nevada." And further: "If the case had been tried and submitted on that issue (domicile) only, we would have quite a different problem, as Bell v. Bell indicates. We have no occasion to meet that issue now and we intimate no opinion on it. However, it might be resolved in another proceeding, we cannot evade the constitutional issue in this case on the easy assumption that the petitioners' domicile in Nevada was a sham and a fraud."
Following this last suggestion and faced with the appraisal that the case had been tried in the main upon an unsound principle of law, we remanded it for another hearing or a new trial, as is the rule in this jurisdiction. 222 N.C. 609, 24 S.E.2d 256. Where a case is tried under a misapprehension of the law, the practice is to remand it for another hearing. S. v. Calcutt, 219 N.C. 545, 15 S.E.2d 9; McGill v.Lumberton, 215 N.C. 752, 3 S.E.2d 324. This then became the law of the case. "A decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal." Harrington v. Rawls (6th syllabus), 136 N.C. 65,48 S.E. 57. See Robinson v. McAlhaney, 216 N.C. 674, 6 S.E.2d 517, and cases there cited. It results, therefore, that the plea of former jeopardy and motion to dismiss were properly overruled. S. v. Rhodes,112 N.C. 857, 17 S.E. 164; United States v. Ball, 163 U.S. 662.
We now come to the exceptions noted during the trial after the special pleas had been overruled.
The defendants are charged with bigamous cohabitation in violation of G. S., 14-183 (C. S., 4342), the pertinent provisions of which follow: "If any person, being married, shall contract a marriage with any other *Page 190 
person outside of this State, which marriage would be punishable as bigamous if contracted within this State, and shall thereafter cohabit with such person in this State, he shall be guilty of a felony . . . Nothing contained in this section shall extend . . . to any person who at the time of such second marriage shall have been lawfully divorced from the bond of the first marriage . . ."
Upon the issues raised by the pleas of traverse, the prosecution offered evidence tending to show that each of the defendants had been previously married; that their respective spouses were still living at the time of the first trial; that the defendants had undertaken to contract a marriage in the State of Nevada, and that thereafter they had cohabited with each other in this State. This made out a prima facie case, sufficient to carry the issue to the jury, and hence the demurrer to the evidence was properly overruled. S. v. Herron, 175 N.C. 754, 94 S.E. 698.
It will be observed that the statute does not apply to persons who have been "lawfully divorced" from the bond of the first marriage at the time of the second marriage. Such persons are exempt from the operation of the statute, and properly so. Hence, a lawful divorce from the bond of the first marriage at the time of the second marriage would be a defense to the prosecution.
The defendants set up in defense their respective divorces obtained in the State of Nevada. The court instructed the jury that the record of these divorces, offered by the defendants, constituted prima facie evidence of their lawfulness and binding effect, not only in the State of Nevada, but also in the State of North Carolina and every other state. Loughran v.Loughran, 292 U.S. 216, 78 L.Ed., 1219.
In reply, the prosecution contended that neither of the defendants had acquired an actual, bona fide domicile in the State of Nevada at the time of the institution of the divorce actions, and that the proceedings, while apparently regular, were in fact void for want of jurisdiction. Andrews v.Andrews, 188 U.S. 14, 47 L.Ed., 366.
In this connection the court instructed the jury as follows:
1. "If a person has a domicile in North Carolina, and such person leaves North Carolina and goes to the State of Nevada simply and solely for the purpose of obtaining a divorce in the State of Nevada, and with the intention of returning to the State of North Carolina when such divorce is obtained, such person never loses his domicile in North Carolina, and never acquires a new domicile in the State of Nevada."
2. "If a court in a suit in the State of Nevada should grant a divorce to a plaintiff who is not domiciled in Nevada, against a nonresident spouse who is not domiciled in the State of Nevada, and who is not personally served with summons in Nevada, and who does not enter a general appearance in the suit in the court in Nevada, then the divorce granted *Page 191 
by the court in Nevada in such instance is void, and is not entitled to full faith and credit in the state in which the nonresident spouse has his or her domicile."
If these pronouncements be sound, the exceptions taken on the trial are without substantial merit and cannot be sustained.
The first instruction would seem to be in accord with the decisions on the subject. Leaving one's domicile of origin and going into another state simply and solely for the purpose of obtaining a divorce, with a mind of immediately returning, is not sufficient to effect a change of domicile.McKarthy v. McKarthy, 39 N.Y.S.2d 922; Commonwealth v. Esenwein,35 A.2d 335; Commonwealth v. Kendall, 162 Mass. 221, 38 N.E. 504; 106 A.L.R., 6, et seq. The animus manendi would be lacking. Williamson v.Osenton, 232 U.S. 619; 106 A.L.R., 14.
Domicile is a matter of fact and intention. In re Martin, 185 N.C. 472,117 S.E. 561; 17 Am. Jur., 595. In ordinary acceptation, it is the place where one lives or has his home. Reynolds v. Cotton Mills, 177 N.C. 412,99 S.E. 240. Two circumstances must concur in order to establish a domicile: first, residence, and secondly, the intention to make it a home, or to live there permanently, or, as some of the cases put it, indefinitely. Horne v. Horne, 31 N.C. 104; Thayer v. Thayer, 187 N.C. 573,122 S.E. 307. To effect a change of domicile, therefore, the first domicile must be abandoned with no intention of returning to it, and actual residence taken up in another place coupled with the intention to remain there permanently or indefinitely. Roanoke Rapids v. Patterson,184 N.C. 135, 113 S.E. 603; Annotation, 148 A.L.R., 1413.
On the other hand, the jury was instructed that if the defendants went to Nevada with the requisite intent and actually acquired a domicile there, though they later changed their minds and returned to this State, the courts of that state acquired jurisdiction of the marital status of the defendants and the decrees in evidence would be entitled to full faith and credit in this State and every other state. Davis v. Davis, 305 U.S. 32,83 L.Ed., 26; 118 A.L.R., 1518; Atherton v. Atherton, 181 U.S. 155,45 L.Ed., 794. The court further instructed the jury that since the defendants had set up these foreign judgments as a defense and the prosecution had challenged them, the practice in this jurisdiction was to require the defendants to show to the satisfaction of the jury that they had acquired bona fide domiciles in the foreign state at the time of the institution of the divorce proceedings. S. v. Melton, 120 N.C. 591,26 S.E. 933. In other words, having pleaded lawful divorces in defense, the burden was on the defendants to satisfy the jury of their lawfulness. S. v.Herron, supra; S. v. Norman, 13 N.C. 222. And while the decrees, standing alone, were to be taken as prima facie valid, nevertheless they *Page 192 
were not conclusive. Streitwolf v. Streitwolf, 181 U.S. 179,45 L.Ed., 807; Thompson v. Whitman, 85 U.S. 457. At the threshold of the case, however, and throughout the hearing, the prosecution was required to establish the guilt of the accused beyond a reasonable doubt. S. v. Harris,223 N.C. 697. Under these instructions, the jury has resolved the issue against the defendants, and the evidence is amply sufficient to support the verdict. Indeed, it was said on the former hearing, "the evidence indicates collusion between the defendants, and bad faith in attempting to secure decrees of divorce, contrary to the laws of this State."
Perhaps it should be noted that what is here said in respect of the "burden of satisfaction" has reference to a defense pleaded in a criminal action, the validity of which is challenged by the prosecution. S. v.Harris, supra. "When a divorce is set up as the sole defense to an indictment, as in this case, the invalidity of such defense is not a collateral matter, but a legitimate reply by the State directly impeaching the defense set up." S. v. Herron, supra. It should not be confused with the rules applicable in civil actions. 143 A.L.R., 1307.
The second instruction above quoted is directly supported by what was said in Bell v. Bell, 181 U.S. 175, 45 L.Ed., 804. "No valid divorce from the bond of matrimony can be decreed on constructive service by the courts of a state in which neither party is domiciled." Jurisdiction of the court granting a divorce in one state may be impeached in another, and if it appear that neither party had acquired a bona fide domicile when and where the proceedings were instituted, notwithstanding recital of the jurisdictional fact and evidence supporting it, the decree annulling the marriage would be void and entitled to no protection under the full faith and credit clause of the Federal Constitution. In re Bingham's Will,39 N.Y.S.2d 756; McKarthy v. McKarthy, supra; Commonwealth v. Esenwein,supra; Annotation 143 A.L.R., 1294; 31 Am. Jur., 156. Nothing was said inDavis v. Davis, supra, which militates against this position. See annotation 118 A.L.R., 1524.
In Andrews v. Andrews, supra, it was said that in divorce actions, domicile is the inherent element upon which jurisdiction must rest, whether the proceeding be ex parte or inter partes. Where one's domicile is, there will his marital status be also. The marriage relation is interwoven with public policy to such an extent that it is dissolvable only by the law of the domicile. So the domiciliary state, and no other, furnishes the proper forum for valid divorce proceedings. Domicile of at least one of the parties is the sine qua non to jurisdiction in actions for divorce. 143 A.L.R., 1298. A domicile once obtained is never lost until another is acquired. Reynolds v. Cotton Mills, supra.
Here, the jury has found that the defendants were domiciled in this State when they brought their actions for divorce in Nevada; that they *Page 193 
had acquired no bona fide domicile in that state, and that the Nevada decrees were ineffectual to sever the marriage ties. The result was a rejection of the pleas interposed by the defendants, and a conviction as charged in the bill of indictment. The record and the law applicable to the facts appearing thereon support the jury's findings. German Sav. LoanSecurity v. Dormitzer, 192 U.S. 125, 48 L.Ed., 373.
It was held in Thompson v. Whitman, 85 U.S. 457, that the full faith and credit clause did not prevent an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered; that the record of a judgment rendered in another state might be contradicted as to the facts necessary to give the court jurisdiction, and, that if it should appear such facts did not exist, the record would be a nullity, notwithstanding a recital in the judgment that such facts did exist. SeeLefferts v. Lefferts, 263 N.Y. 131, 188 N.E. 279; and Forster v.Forster, 46 N.Y.S.2d 320.
There remains to be considered the constitutionality of the statute under which the defendants have been indicted and convicted. It is challenged upon the ground that it offends both the Federal and State Constitutions. This was the subject of investigation in the case of S. v.Moon, 178 N.C. 715, 100 S.E. 614. The constitutionality of the enactment was there upheld. It would only be repetitious to reiterate here what was said there. Nor is the fact that the bigamous cohabitation took place in Avery County, and not in Caldwell, fatal to the prosecution. S. v.Moon, supra. The defendants originally lived in Caldwell County and were apprehended there. The venue is prescribed by the statute: "Any such offense may be dealt with, tried, determined and punished in the county where the offender shall be apprehended, or be in custody, as if the offense had been actually committed in that county."
From a legal standpoint, it all comes to this: On the first appeal the State relied on the case of Haddock v. Haddock. We were minded to follow that case. It was overruled by the Supreme Court of the United States. The State now relies on the case of Bell v. Bell. We are disposed to follow this case.
A careful perusal of the record leaves us with the impression that the case has been tried in accordance with the pertinent decisions on the subject, and that it is free from reversible error. Hence, the verdict and judgments must be upheld.
No error. *Page 194