J. J. PRIDGEN v. MARY PRIDGEN.

(Filed 23 November, 1932.)

**1. Marriage C a—Void marriage is a nullity and may be impeached collaterally.**

A voidable marriage is valid for all civil purposes until annulled by a court of competent jurisdiction in a direct proceeding, while a void marriage is a nullity and may be impeached at any time.

**2. Same—Marriage may be attacked by party thereto on ground that other party had not obtained valid decree dissolving prior marriage.**

Where a wife attempts to marry again when no valid divorce *a vinculo* had been obtained from her living husband, such second attempted marriage is absolutely void and may be annulled by the husband of the second attempted marriage in an action instituted for that purpose. C. S., 1658, 2495.

**3. Divorce D a: States A a—Divorce of another state based upon service by publication on resident of this State is not valid here.**

Where a husband domiciled in another state obtains a decree of absolute divorce from his wife domiciled in this State in which proceeding the wife is served with summons by publication in accordance with the laws of such other state, and in which the wife does not appear in person or by attorney: *Held*, the decree of divorce based upon such service is not valid in this State, and an attempted second marriage of the wife will be declared void in an action brought by the husband of the second attempted marriage. The distinction is noted where both parties are residents of such other state and its courts have jurisdiction of both parties.

APPEAL by plaintiff from *Barnhill, J.,* at May Term, 1932, of DURHAM.

This is an action to annul a pretended marriage between the plaintiff and the defendant on the ground that the defendant had a living husband by a preceding marriage at the time the ceremony between the plaintiff and the defendant was celebrated.

The material facts are as follows: The parties to this action are residents of North Carolina, the defendant all her life having resided in Durham County. They were married in Halifax County in 1921 or 1923. The plaintiff was a widower. The defendant admits that at the time she married the plaintiff her first husband, John A. Dowd, was living and that he is now a resident of North Carolina. In her answer she alleged that prior to her intermarriage with the plaintiff she and her former husband had been divorced, and for the purpose of showing that the decree is invalid in this State, the plaintiff introduced with-

out objection the following record and judgment roll of a civil action prosecuted in the county of Richmond, State of Georgia, entitled "John A. Dowd *v.* Mary Dowd."

"State of Georgia—Richmond County.

To the Superior Court of said county:

The petition of John A. Dowd, of said county, shows:

1. That in the year 1907 plaintiff and Mary Cheek intermarried in due form of law, and petitioner and defendant have been ever since and now are man and wife.

2. Petitioner has been a bona fide resident of the State of Georgia for 12 months before the filing of this application for divorce.

3. That on 1 May, 1913, his said wife deserted him, petitioner, with-.out any cause on his part; that said desertion was wilful and has been continuous up to the present time.

4. That his said wife, Mary Dowd, is a nonresident of the State of Georgia, and her present address is unknown to petitioner.

5. Wherefore, petitioner prays that process may issue directed to the defendant directing and requiring her to be and appear at the next term of this court to be held in and for said county to answer your petitioner's libel for total divorce.

Henry C. Roney, Attorney for Petitioner.

(Filed in office, this 25 May, 1916.)

Richmond Superior Court—July Term, 1916.    Libel for Divorce.

John A. Dowd *v.* Mary Dowd.

It appearing from the petition that the defendant in the above stated case, Mary Dowd, is a nonresident of the State of Georgia;

Ordered, that service be perfected on the defendant by publication in the Augusta *Herald,* a public gazette of said county in which legal advertisements are published; twice a month for two months, before the next term of this court. This 25 May, 1916.

Henry C. Hammond, J. S., C. A. C.

State of Georgia—Richmond County.

Libel for Divorce in Richmond Superior Court, July Term, 1916.

John A. Dowd *v.* Mary Dowd.

To the defendant, Mary Dowd: You are hereby required in person or by attorney to be and appear at the Superior Court next to be held in and for the county aforesaid on the third Monday in July, 1916, then and there to answer the plaintiff in action for libel for divorce.

In default of said appearance said court will proceed thereon as to justice may appertain.

Witness the Honorable Henry C. Hammond, judge of the said court.
This 25 May, 1916.                              Daniel Kerr, clerk.

Richmond Superior Court—July Term, 1916.     Libel for Divorce.
John A. Dowd *v.* Mary Dowd.

I do hereby certify that notice in the above entitled action was advertised in the Augusta *Herald,* the legal medium for advertisement in Richmond County, once a week for four weeks, to wit: 26th and 30th of May, 1916, and 7th and 12th of June, 1916.

R. E. Cothran, of the Augusta *Herald.*

It appearing that advertisement has been made in the Augusta *Herald* once a week for four weeks of the above stated case, it is hereby ordered that due and legal service has been made and perfected upon defendant as required by law.

31 October, 1916.          Henry C. Hammond, J. S., C. A. C.

JUDGMENT.

Richmond Superior Court—July Term, 1916.     Libel for Divorce.
John A. Dowd *v.* Mary Dowd.

Two concurring verdicts having been rendered in this case granting a divorce *a vinculo matrimonii* between the parties upon legal principles, it is therefore considered and adjudged by the court that the marriage contract made and entered into between the parties in this case be, and the same is hereby, declared to be set aside and dissolved as fully and effectually as if no such contract had ever been made and entered into and that both parties may remarry.

Ordered further that defendant pay the costs of these proceedings.
This 27 January, 1917.

Henry C. Hammond, J. S., C. A. C.

State of Georgia—Richmond County.

Clerk's Office—Superior Court.

I, Daniel Kerr, clerk of Superior Court of said county, certify that the foregoing five typewritten pages contain a true copy of the record *In re* John A. Dowd *v.* Mary Dowd, of file in this office and of record in the minutes and book of writs of said court.

Witness my signature and seal of said court. This 21 November, 1931.
(Signed)   David Kerr, clerk of Superior Court.
(Seal.)   Superior Court, Richmond County."

The Code of Georgia provided as one of the grounds of total divorce the wilful and continued desertion by either of the parties for the term of three years.

The defendant offered no evidence, and the jury returned the following verdict:

1. Is the plaintiff now, and has been, for the two preceding years, a resident of North Carolina, as alleged in the complaint? Answer: Yes.

2. Was there a contract of marriage between plaintiff and defendant, as alleged? Answer: Yes.

3. Did the defendant at the time of said contract of marriage then have a living husband by a preceding marriage, as alleged? Answer: No.

With reference to the third issue the court gave this instruction: "Now, if she had a living husband at the time she entered into the contract with plaintiff, then she could not contract—could not enter into another contract of marriage with him, because it would be bigamous and contrary to law, but if she had been married theretofore and her husband was either dead or there had been a binding decree of divorce, then that left her where she could remarry. The plaintiff himself offers a certified copy of the record in the courts of Georgia, in which a decree of divorce was entered in 1917 between the defendant, who was then Mary B. Dowd, and John A. Dowd, and upon that evidence the court instructs you that at the time of the marriage upon that record, if you believe it, then that she did not have a living husband at the time she entered into the contract in 1923 with the plaintiff and it would be your duty to answer that issue, No."

The plaintiff excepted.

*J. W. Barbee* for *plaintiff*.
*B. Ray Olive, M. M. Leggett* and *A. G. Johnson* for *defendant*.

ADAMS, J. For the purpose of showing that the decree of divorce rendered by the court in Georgia is without legal validity in North Carolina the plaintiff introduced the judgment roll, from which it appears that the defendant in the action was served with constructive and not with personal service of process. If the decree is a nullity here the plaintiff is not estopped by its introduction, "for what the law pronounces void cannot estop." *Gathings v. Williams*, 27 N. C., 487. We must therefore direct our investigation to the legal efficacy in this State of the decree granted by the Georgia court.

Between void and voidable marriages the law recognizes a distinction which applies to the status of the parties before the marriage relation is

dissolved. A voidable marriage is valid for all civil purposes until annulled by a competent tribunal in a direct proceeding, but a void marriage is a nullity and may be impeached at any time. Schouler's Marriage, etc., sec. 1081; *Johnson v. Kincade,* 37 N. C., 470; *Crump v. Morgan,* 38 N. C., 91; *Williamson v. Williams,* 56 N. C., 446; *Taylor v. White,* 160 N. C., 38. In *Gathings v. Williams, supra,* the principle is stated in these words: "Where the marriage is between persons, one of whom has no capacity to contract marriage at all, as where there is want of age ("want of age" being obiter, *Koonce v. Wallace,* 52 N. C., 194), or understanding, or a prior marriage still subsisting, the marriage is void absolutely and from the beginning, and may be inquired of in any court. For, although in such case there may be a proceeding in the ecclesiastical court, it is not to dissolve the marriage, but merely, for the convenience of the parties, to find the fact and declare the marriage thereupon to have been void *ab initio,* and no civil rights can be acquired under such a marriage. It is said to be no marriage, but a profanation of marriage, and the *factum* is a nullity."

The General Assembly has provided that all marriages between persons either of whom has a husband or wife living at the time of such marriage shall be void, and that the aggrieved party may seek relief in the Superior Court, which has succeeded to the functions of the ecclesiastical courts of England. C. S., 1658, 2495; *Gathings v. Williams, supra; Johnson v. Kincade, supra; Setzer v. Setzer,* 97 N. C., 252; *Watters v. Watters,* 168 N. C., 411. The plaintiff accordingly brought suit, not for divorce, but to have the marriage relation between the defendant and himself adjudged void from the beginning, on the ground that at the time their marriage was solemnized the defendant had a husband living. *Taylor v. White, supra.*

The cause of action is founded almost entirely upon documentary evidence which is made a part of the case on appeal. It is admitted that the defendant has all her life been a resident of North Carolina and at the commencement of the action was a resident of Durham County. In the year 1907, in this State, she married a man named John A. Dowd, who afterwards left North Carolina and went to Richmond County, in the State of Georgia. There he brought suit against his wife, the present defendant, for divorce from the bonds of matrimony. The Code of Georgia provided as one of the grounds for total divorce the "wilful and continued desertion by either of the parties for the term of three years."

In his petition Dowd alleged that he and Mary Cheek, the defendant, had intermarried in due form of law and had since been husband and wife; that he had been a bona fide resident of the State of Georgia for

twelve months before the filing of his application for divorce; that on 1 May, 1913, his wife deserted him without any cause on his part; that her desertion of him was wilful and had been continuous up to 25 May, 1916, the date his petition was filed; that his wife was a non-resident of the State of Georgia; and that her address was unknown to him. It was thereupon ordered that service be perfected on the defendant by publication in a public gazette of the county in which legal advertisements were published, and upon certificate of the publisher it was "ordered that due and legal service on the defendant had been made and perfected." The defendant was served with process only in this way; she neither appeared in person or by attorney nor filed an answer. At July Term, 1916, the court adjudged, two concurring verdicts having been rendered in accordance with the law of Georgia, that the marriage contract entered into between the parties in the case be declared to be set aside and dissolved as fully and effectually as if no such contract had been made and that both parties might marry again.

Upon these undisputed facts the plaintiff contends that the judgment rendered in the Georgia Court is void in North Carolina as against the defendant and that at the time of his pretended intermarriage with her she was disqualified by reason of her former marriage to enter into another matrimonial contract.

It is a settled principle of law that a personal judgment rendered in the court of one state against a nonresident merely upon constructive service without acquiring jurisdiction of the person of the defendant, is void by operation of the due process clause of the Fourteenth Amendment of the Constitution of the United States: "Nor shall any State deprive any person of life, liberty, or property without due process of law." *Pennoyer v. Neff,* 95 U. S., 714, 24 L. Ed., 565. But every government as regards its own citizens possesses inherent power over the marriage relation; from which it results that where a court of one state has acted as to a citizen of that state concerning the dissolution of the marriage, such action is binding in that state as to such citizens, and the judgment may not therein be questioned on the ground that the action of the state in dealing with its own citizens was repugnant to the due process clause of the Federal Constitution. *Maynard v. Hill,* 125 U. S., 190, 31 L. Ed., 654.

If a husband and his wife are domiciled in the same state there exists jurisdiction in such state to enter a decree of divorce which will be entitled to enforcement in another state by virtue of the full faith and credit clause; and if a bona fide domicile has been acquired in a state by one of the parties to the marriage and a suit for divorce is brought in

such state by the domiciled party, the courts of that state, if they acquire personal jurisdiction of the other party, have authority to enter a decree of divorce entitled to be enforced in every state by reason of the full faith and credit clause. *Cheever v. Wilson,* 9 Wall., 108, 19 L. Ed., 604. Still, the mere domicile in the state of one party to the marriage does not confer upon the courts of that state jurisdiction to make a decree of divorce enforceable in all the other states, by the full faith and credit clause, against a nonresident who was constructively served with process and did not appear in person or by attorney. *Haddock v. Haddock,* 201 U. S., 562, 50 L. Ed., 867.

In the light of these principles it is important to know what this Court has said in opinions dealing directly with the subject.

In *Irby v. Wilson,* 21 N. C., 568, the facts were as follows: In 1804 Alexander Jones and Mary Smith, having their domicile in South Carolina, intermarried according to the laws of that state, and in 1809 removed to Tennessee, where they became permanently domiciled. The wife separated from her husband in 1810 and came to Lincoln County, North Carolina. Thereafter Jones brought suit for divorce against his wife in Tennessee upon constructive service. The defendant neither answered nor appeared nor resisted the relief sought. The Circuit Court of Giles County, Tennessee, on 11 April, 1816, ordered and decreed "that the bonds of matrimony existing between the said Alexander Jones and the said Mary H. Smith be entirely dissolved and made void." On 5 July, 1821, Joshua Irby and the said Mary H. Jones intermarried in Lincoln County. Jones died in 1827 and Joshua Irby in 1828. After the death of the latter a contest involving alleged rights to property arose between the plaintiffs, who claimed under him, and his wife and the administrator. It was contended that Joshua Irby had no interest in certain property of Mary H. by virtue of his marital rights because the marriage between him and her was void, the decree rendered in Tennessee having no extra-territorial effect. In an opinion delivered by *Chief Justice Ruffin* the Court adjudged that the marriage of Joshua Irby with Mary H. Jones was void and that he did not thereby acquire any property that was hers. It is there said: "The Court is of opinion that the decree of the court of Tennessee is altogether inoperative and null, because it was not an adjudication between any parties; since the wife did not appear in the suit, nor was served with process, and was not a subject of Tennessee, but was a citizen and inhabitant of this State, and therefore not subject to the jurisdiction of Tennessee, nor amenable to her tribunals. It lies at the foundation of justice that every person who is to be affected by an adjudication should have the opportunity of

being heard in defense, both in repelling the allegations of fact, and upon the matter of law; and no sentence of any court is entitled, intrinsically, to the least respect in any other court, or elsewhere, when it has been pronounced *ex parte,* and without opportunity of defense. . . . Admitting, nevertheless, in this country such a judgment in one state between the citizens of that state to be conclusive in all the others, it will not yet follow that the same effect is to be allowed to a judgment in like circumstances pronounced by a court in favor of one of its own citizens against an absent citizen of another state who did not appear, was not served with process, nor had any notice of the proceeding. The utmost extent to which the courts of one country can be expected to go in execution of the judicial sentences of another country in such a case is, when both persons are the citizens of the state of the forum. When the party to be charged belongs to a different state, and especially to that from which the execution of the sentence is asked, the answer must be given, 'We cannot aid in such a palpable disregard of right and violation of justice.' . . . But it is said that notice was in the contemplation of the law of Tennessee, given by proclamation, suing out process, and advertisement in a newspaper. The regularity of the judicial proceedings in those respects is not questioned here. They cannot be; for it is supposed that every interlocutory adjudication stands on the same ground with the final one, and proves itself to be right. It is assumed, therefore, that the wife had the notice, as prescribed in the law of Tennessee; and that the court of Giles was the proper court, in reference to the jurisdiction of this subject, as between it and the other courts of Tennessee, under her law. But the notice there deemed legal is not, in fact, notice; and the courts of this State are not bound by the fiction imposed by Tennessee on her own courts. The reason is, not that fault is to be found with the courts of Tennessee, but with the law of Tennessee. That state has no power to enact laws to operate upon things or persons not within her territory; and if she does, although her domestic tribunals may be bound by them, those of other countries are not obliged to observe them, and are not at liberty to enforce them. The laws of one country have no direct extra-territorial efficacy. The wife, Mary H. Jones, was not bound to appear in a court in Tennessee; nor is she concluded by the sentence in a cause to which she was not a party. That is the principle which controls the opinion of this Court."

There are several cases in which this opinion has been reaffirmed. *Gathings v. Williams, supra; Davidson v. Sharpe,* 28 N. C., 14; *Yarbrough v. Arrington,* 40 N. C., 291; *Battle v. Jones,* 41 N. C., 567; *Calloway v. Bryan,* 51 N. C., 569; *Harris v. Harris,* 115 N. C., 587. It is clearly held in these cases that one State cannot pass a law to

operate out of its territory, or to authorize its courts to act on things or persons not within its jurisdiction, and that while a statute may bind the courts of the state in which it is enacted, the courts of other states will not acknowledge its obligation or aid in executing it directly or indirectly.

In *Bidwell v. Bidwell,* 139 N. C., 402, there is an expression apparently inconsistent with the cases above cited. It is this: "The better doctrine, however, now seems to be that where the domicile of the plaintiff has been acquired in good faith, and not in fraud or violation of some law of a former domicile, a divorce of this kind (decreed upon constructive service) should be recognized as binding everywhere." In reference to this statement the Supreme Court of the United States remarked: "A line of decisions in the State of North Carolina would also cause us to embrace the law of that State within this classification (appearing in *Haddock's case*) but for a doubt engendered in our minds as to the effect of the law of North Carolina on the subject, resulting from suggestions made by the North Carolina Court in the opinion in *Bidwell v. Bidwell.*"

The statement in the *Bidwell case* was obiter, apparently founded on *Atherton v. Atherton,* 181 U. S., 155, 45 L. Ed., 794. In *Haddock v. Haddock, supra,* the *Atherton case* is distinguished, the one point there decided being the validity of a divorce obtained at the matrimonial domicile; and in *S. v. Herron,* 175 N. C., 754, this Court said that an examination of *Bidwell v. Bidwell* does not show that North Carolina should be taken out of the class of states which decline to recognize the validity of a divorce rendered in a court which had jurisdiction over only one of the parties. The opinion was written by *Chief Justice Clark. Justice Allen* wrote a concurring opinion in which he suggested that the expression referred to was based on two decisions of the Supreme Court of the United States which were modified in the *Haddock case.* The *Justice* who wrote the opinion in the *Bidwell case* was then a member of this Court and apparently concurred in the law as declared in *S. v. Herron.* We may therefore conclude that the expression used by him is not to be taken as modifying the doctrine laid down in *Irby v. Wilson* and subsequent cases of like tenor. According to these decisions the decree granted in Georgia is a nullity here and must be declared void in this State. There is error in the charge to the jury and in the judgment of the court.

Error.