## MUSSA v. PALMER-MUSSA

[217 N.C. App. 339 (2011)]

JUMA MUSSA, Plaintiff v. NIKKI PALMER-MUSSA, Defendant

No. COA11-209

(Filed 6 December 2011)

**Annulment—motion to dismiss improperly granted— bigamy—improper solemnization—religious dissolution— voidable marriage**

The trial court erred by dismissing plaintiff's complaint for annulment. Defendant's prior marriage to another man, which was invalid for want of proper solemnization, was merely voidable until annulled in a direct action by a proper tribunal. There is no authority supporting the dissolution of a marriage by religious means that can be deemed to be the equivalent of a judicial determination regarding the validity of a marriage. Thus, any marriage between plaintiff and defendant was bigamous.

Judge BRYANT dissenting.

Appeal by plaintiff from order entered 27 July 2010 by Judge Christine Walczyk in Wake County District Court. Heard in the Court of Appeals 29 August 2011.

*Steven K. Griffith, for plaintiff-appellant.*

*Nikki Palmer-Mussa, pro se, for defendant-appellee.*

CALABRIA, Judge.

Juma Mussa ("plaintiff") appeals from an order dismissing plaintiff's complaint for annulment. We reverse and remand.

## I. Background

On 27 November 1997, plaintiff and Nikki Palmer-Mussa ("defendant") were married in Raleigh, North Carolina. The parties separated on 3 February 2009. The parties had three children together.

Earlier in 1997, defendant participated in a wedding ceremony with Khalil Braswell ("Mr. Braswell"). At the ceremony, defendant and Mr. Braswell consented to become husband and wife. Neither defendant nor Mr. Braswell obtained a marriage license, as they only sought to comply with Islamic marriage requirements. After the ceremony, the couple lived together in Maryland, but the marriage was never consummated.

Defendant divorced Mr. Braswell in the manner required by Islamic law by returning the dowry and declaring that she was divorced from her husband. At the time this took place, defendant believed she was divorced since the marriage was entered into under Islamic law and ended under Islamic law. However, defendant never sought a judicial divorce or annulment and Mr. Braswell was still alive.

After returning to North Carolina, defendant met plaintiff. Shortly after meeting, the parties decided to marry and remained married for twelve years. During the marriage, the parties purchased property as husband and wife, filed joint tax returns and defendant was listed as plaintiff's wife on his insurance policy.

On 4 December 2008, defendant filed a complaint for divorce from bed and board, in another action. As a result of those proceedings, the court granted defendant child support, post-separation support and attorney's fees. On 3 December 2009, plaintiff filed a complaint for annulment based on bigamy. Plaintiff alleged his marriage to defendant was void *ab initio*, pursuant to N.C. Gen. Stat. § 51-3, as defendant had been married to Mr. Braswell earlier in 1997, had never obtained an annulment or divorce from Mr. Braswell and Mr. Braswell was still living. On 2 February 2010, defendant filed an answer, affirmative defenses, motions to dismiss and a motion for attorney's fees.

At a trial on the matter, there was a dispute regarding the timing of defendant's disclosure regarding her previous marriage. Defendant stated she disclosed her previous marriage prior to their marriage, but plaintiff claimed he learned of the previous marriage after he and defendant married. The court entered an order on 27 July 2010 granting defendant's motion to dismiss plaintiff's claim for annulment. Defendant's request for attorney's fees was preserved for future determination.

## II.  Standard of Review

The proper standard of review for an involuntary dismissal is "(1) whether the findings of fact by the trial court are supported by competent evidence, and (2) whether the findings of fact support the trial court's conclusions of law and its judgment." *Woodridge Homes Ltd. Partnership v. Gregory*, ___ N.C. App. ___, 697 S.E.2d 370, 375 (2010) (citations omitted). The trial judge's "findings of fact are conclusive on appeal if supported by competent evidence" but the "trial court's conclusions of law are reviewable de novo on appeal." *Riley v. Ken Wilson Ford, Inc.*, 109 N.C. App. 163, 168, 426 S.E.2d 717, 720 (1993).

## III. Bigamy

Plaintiff argues that the trial court erred by granting defendant's motion to dismiss. We agree.

Plaintiff contends that the first marriage was merely voidable, and since the previous marriage with Mr. Braswell had not been annulled nor was there a divorce judgment, defendant was still married to Mr. Braswell when she married plaintiff, therefore, the marriage between plaintiff and defendant was void. The dispositive issue is whether the defendant's first marriage was void *ab initio* or merely voidable because of the status of the person who performed the ceremony. Mr. Braswell's friend, Kareem, who performed the ceremony, was not an imam, an Islamic religious leader. His primary profession was construction. He was not even a member of the church staff or employed by the church.

The law recognizes a distinction between void and voidable marriages. *Pridgen v. Pridgen*, 203 N.C. 533, 536, 166 S.E. 591, 593 (1932). "[A] void marriage is a nullity and may be impeached at any time." *Id.* at 537, 166 S.E. at 593. However, "[a] voidable marriage is valid for all civil purposes until annulled by a competent tribunal in a direct proceeding." *Id.* It is a long-standing rule in North Carolina that the only marriage that is absolutely void is a bigamous marriage. *Watters v. Watters*, 168 N.C. 411, 412, 84 S.E. 703, 704 (1915); *Fulton v. Vickery*, 73 N.C. App. 382, 387, 326 S.E.2d 354, 358 (1985).

When defendant married Mr. Braswell in 1997, the 1977 version of N.C. Gen. Stat. § 51-1 was in effect which stated:

> The consent of a male and female person who may lawfully marry, presently to take each other as husband and wife, freely, seriously and plainly expressed by each in the presence of the other, and in the presence of an ordained minister of any religious denomination, minister authorized by his church, or of a magistrate, and the consequent declaration by such minister or officer that such persons are husband and wife, shall be a valid and sufficient marriage.

*State v. Lynch*, 301 N.C. 479, 486-87, 272 S.E.2d 349, 353-54 (1980). In her answer, defendant admitted that both she and Mr. Braswell participated in a ceremony, consented to take each other as husband and wife, and that each had "plainly expressed his or her consent freely and seriously in the presence of the other." "Upon proof that a marriage ceremony took place, it will be presumed that it was legally per-

formed and resulted in a valid marriage." *Kearney v. Thomas*, 225 N.C. 156, 163, 33 S.E.2d 871, 876 (1945).

The trial court found that there was insufficient evidence to find Kareem "had the status of either 'an ordained minister' or a 'minister authorized by his church' "…or that "Kareem was a magistrate." Based on the findings, the trial court concluded as a matter of law. that because there was no marriage license and "insufficient evidence that the marriage ceremony met the requirements for a valid marriage," defendant did not marry Mr. Braswell. Since there was no marriage, the trial court reasoned, there was no need for an annulment, a divorce or the death of either party to terminate the marriage.

While the evidence presented at trial supported the trial court's finding that Kareem was not authorized to conduct the marriage within the statutory requirements, the court's finding does not support its' conclusion of law that defendant and Mr. Braswell were not married. The well-established law in North Carolina confirms that only bigamous marriages are void and all other marriages are voidable. *See Fulton*, 73 N.C. App. at 387, 326 S.E.2d at 358. Furthermore, the Court has uniformly held "that a marriage, without a license as required by statute, is valid." *Sawyer v. Slack*, 196 N.C. 697, 700, 146 S.E. 864, 865 (1929). Therefore, even though defendant and Mr. Braswell did not have a marriage license and the ceremony failed to meet statutory requirements, the marriage is merely voidable.

As stated in *Pridgen*, a voidable marriage is valid until a tribunal annuls the marriage in a direct proceeding. *Pridgen*, 203 N.C. at 537, 166 S.E. at 593. In the instant case, defendant admitted that neither a divorce nor an annulment was granted by a court in North Carolina, or any other state, and that Mr. Braswell was still living. While defendant claimed she and Mr. Braswell were divorced according to the laws of Islam, there is no authority supporting the dissolution of a marriage by religious means that can be deemed to be "the equivalent of a judicial determination" regarding the validity of a marriage. *See Fulton*, 73 N.C. App. at 386-87, 326 S.E.2d at 357 (divorce is a creature of statute). Therefore, at the time of defendant's marriage to plaintiff, she was still married to Mr. Braswell and thus any marriage between plaintiff and defendant was bigamous, and consequently void.

Defendant cites to *Lynch* to support her argument that since her marriage to Mr. Braswell failed to meet the statutory requirements, that the marriage is invalid and her marriage to plaintiff is not bigamous. In *Lynch*, the defendant was charged with the crime of bigamy.

*Lynch*, 301 N.C. at 479, 272 S.E.2d at 349. The prior marriage was performed by the bride's father who had received a certificate of ordination as minister in the Universal Life Church, Inc. *Id.* at 480-81, 272 S.E.2d at 350. The Court held that the State had failed to prove a prior marriage because "[a] ceremony solemnized by a . . . layman...who bought for $10.00 a mail order certificate giving him 'credentials of minister'. . . is not a ceremony of marriage to be recognized for purposes of a bigamy prosecution in the State of North Carolina." *Id.* at 488, 272 S.E.2d at 354-55.

Despite the similarities to the instant case, in *Lynch* the State had the burden to prove the person performing the marriage ceremony had statutory authority beyond a reasonable doubt. *See Id.* at 486, 272 S.E.2d at 353; 1 Suzanne Reynolds, *Lee's North Carolina Family Law* § 3.8, at 146 (5th ed. 1993). By holding the State failed to meet this burden, rather than annul the marriage, the Court refused to allow the bigamy conviction to stand. *Id.* Therefore, the holding in *Lynch* does not conflict with the general rule that a voidable marriage must be annulled by a direct action. *Id.* Furthermore, no civil case in North Carolina dealing with the issue of bigamy has chosen to follow *Lynch* since it was decided in 1980. Therefore, we hold that defendant's marriage to Mr. Braswell, which is invalid for want of proper solemnization, is merely voidable until annulled in a direct action by a proper tribunal.

## IV. Conclusion

Defendant's marriage to Mr. Braswell was voidable, but defendant never took any action to terminate the marriage. As such, the marriage was still valid when defendant married plaintiff. Therefore, the marriage between plaintiff and defendant is void.

Reversed and Remanded.

Chief Judge MARTIN concurs.

Judge BRYANT dissents in a separate opinion.

BRYANT, Judge, dissenting.

Because I do not believe that North Carolina law allows the presumption of validity conferred upon a marriage to be successfully challenged absent direct evidence, I respectfully dissent.

I agree with the majority that the plaintiff presented insufficient evidence to support the conclusion that the marriage ceremony participated in by defendant and Braswell in early 1997 met the statutory criteria set out under N.C. Gen. Stat. § 51-1 (1997) requiring the participation of "an ordained minister of any religious denomination," a "minister authorized by his church," or "a magistrate." N.C.G.S. § 51-1 (1997). Therefore, I agree with the trial court's conclusion "there is insufficient evidence that the marriage ceremony met the requirements for a valid marriage, [thus,] the Court cannot find that Defendant married Mr. Braswell as contemplated by the statute." *See Lynch*, 301 N.C. at 488, 272 S.E.2d at 354 ("Whether defendant is married in the eyes of God, of himself or of any ecclesiastical body is not our concern. Our concern is whether the marriage is one the State recognizes."). However, the dispositive issue is not whether defendant's first marriage was void *ab initio* or merely voidable but, rather, whether plaintiff met his burden of proof establishing that defendant's first marital union was valid and remained in existence at the time defendant married plaintiff.

"Upon proof that a marriage ceremony took place, it will be presumed that it was legally performed and resulted in a valid marriage." *Kearney*, 225 N.C. at 163, 33 S.E.2d at 876 (citation omitted). "[P]roof of the second marriage adduced by the defendant, if sufficient to establish it before the jury, raises a presumption of its validity, upon which property rights growing out of its validity may be based." *Id.* at 163-64, 33 S.E.2d at 876-77. "[W]hen the plaintiff attempts to assert a property right which is dependent upon the invalidity of a marriage, he must, as the attacking party, make good his cause by proof." *Id.* at 163, 33 S.E.2d at 876. "The laws of evidence do not recognize a presumption on a presumption. The facts upon which a presumption is based must be proved by direct evidence." *Id.* (citation omitted).

Here, the record establishes that plaintiff and defendant were married on 27 November 1997. A marriage license was obtained, and the validity of the marriage ceremony is uncontested. Three children were produced from the union.

Because the validity of the current marriage was not raised as an issue before the trial court, North Carolina law confers upon it a presumption of validity. *See id.* If such a presumption is to be successfully countered, it must be by direct evidence, not a presumption. *See id.*

Plaintiff's direct evidence failed to establish the existence of a valid prior marriage as a result of the early 1997 ceremony. Therefore,

plaintiff's claim that his marriage to defendant was void *ab initio* cannot prevail. Further, though perhaps not a part of plaintiff's direct evidence, the record reflects that the early 1997 Islamic marriage plaintiff alleges was valid ended in divorce in a manner recognized under Islamic law. Accordingly, I dissent.