**MUSSA v. PALMER-MUSSA**

[366 N.C. 185 (2012)]

JUMA MUSSA v. NIKKI PALMER-MUSSA

No. 10A12

(Filed 24 August 2012)

**Annulment— not a bigamous marriage—person not authorized to perform marriage ceremonies in North Carolina**

. Plaintiff could not annul his twelve-year marriage to defendant on grounds that their marriage was bigamous when the uncontested finding was that defendant's alleged first marriage was not done by a person authorized to perform marriage ceremonies in North Carolina. The trial court did not err by dismissing plaintiff husband's annulment action.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 217 N.C. App. 339, 719 S.E.2d 192 (2011), reversing and remanding an order dismissing plaintiff's complaint entered on 27 July 2010 by Judge Christine Walczyk in District Court, Wake County. Heard in the Supreme Court on 17 April 2012.

*Steven K. Griffith for plaintiff-appellee.*

*Smith Moore Leatherwood LLP, by Matthew Nis Leerberg and Elizabeth Brooks Scherer, for defendant-appellant.*

JACKSON, Justice.

In this action plaintiff Juma Mussa seeks to annul his twelve-year marriage to defendant Nikki Palmer-Mussa on grounds that their marriage was bigamous. After conducting a bench trial, the district court made findings of fact, which are uncontested on appeal. Based on these findings, the district court concluded that plaintiff failed to present sufficient evidence to support his claim. As a result, the district court dismissed the case. Because the district court's unchallenged findings of fact support its conclusions of law, we affirm the district court's order. *See Carolina Power & Light Co. v. Emp't Sec. Comm'n*, 363 N.C. 562, 564, 681 S.E.2d 776, 777 (2009). Accordingly, we reverse the decision of the Court of Appeals.

Plaintiff and defendant were married on 27 November 1997 during a ceremony at the Islamic Center of Raleigh. The ceremony was performed by an imam who was authorized to perform marriages pursuant to both the laws of North Carolina and the tenets of Islam. The couple obtained a marriage license before the ceremony and the

imam signed it. Following the ceremony, the couple held themselves out as husband and wife during the next twelve years. Plaintiff listed defendant as his wife on both his health and dental insurance policies. The couple filed joint tax returns, purchased real property together, and had three children who now are fourteen, ten, and eight years old.

On 4 December 2008, defendant filed a complaint for divorce from bed and board in the District Court, Wake County. Approximately two months later, on 3 February 2009, plaintiff sought a domestic violence protection order against defendant. The district court issued the protection order on 12 February 2009, finding, among other things, that plaintiff and defendant were married. Two days after requesting the domestic violence protection order, plaintiff filed an answer to defendant's complaint for divorce from bed and board. In his answer plaintiff asserted several counterclaims in which he requested divorce from bed and board, custody of the couple's children, child support, and equitable distribution. Both parties admitted in their pleadings that they were married.

On 17 February 2009, plaintiff filed motions for a psychological evaluation of defendant, temporary child custody, and possession of the marital residence. In response defendant filed a motion for child custody, child support, postseparation support, alimony, equitable distribution, and attorney's fees. The trial court conducted a hearing on defendant's motions on 1 September 2009. On 30 September 2009, the trial court entered an order that, among other things: (1) awarded defendant $212.24 per month in child support and $250.00 per month in postseparation support; and (2) declared plaintiff in arrears as to his support obligations. Notably, the order found that plaintiff and defendant were married on 27 November 1997 and that neither party had challenged the validity of their union at the time of the hearing or the entry of the order.

Approximately three months later, on 3 December 2009, plaintiff filed this annulment action, alleging that his marriage to defendant was bigamous pursuant to section 51-3 of the North Carolina General Statutes. Plaintiff's complaint stated that his marriage to defendant was void because defendant had married Khalil Braswell in early 1997 and the alleged union had not been dissolved by divorce, annulment, or death. In an answer filed on 2 February 2010, defendant asserted several affirmative defenses and made two motions to dismiss plaintiff's case. Defendant's answer admitted, among other things, that: (1) she and Braswell had participated "in a ceremony" in

early 1997; (2) neither she nor Braswell had obtained an annulment or divorce from any jurisdiction; and (3) Braswell was still living when she married plaintiff. Defendant's answer also stated that, notwithstanding her participation in the ceremony, she and Braswell had not established a legally valid marriage because the ceremony was conducted by a person who "was not authorized to perform marriage ceremonies." Additionally, defendant noted that she and Braswell had not obtained a marriage license prior to the ceremony and that there was no other documentation of the event.

The district court held a bench trial on plaintiff's annulment action on 17 March 2010. Plaintiff called six witnesses to testify: defendant, an imam who presented expert testimony regarding Islamic marriage practices, two of defendant's acquaintances, defendant's mother, and himself. Defendant and her mother were the only witnesses who attended the ceremony involving defendant and Braswell.[1]

Defendant testified that in early 1997 she and Braswell participated in a marriage ceremony at the Islamic Center of Raleigh during which they freely and seriously gave their consent to take the other as husband and wife before a friend of Braswell's named Kareem.[2] Defendant stated that, even though she and Braswell expected to enter into a long-term marriage, they did not obtain a marriage license prior to the ceremony because they only intended to establish a religious union. Defendant testified that following the ceremony she and Braswell attended a wedding reception at a historic home in Raleigh and then honeymooned in West Virginia. Defendant told the district court that she lived with Braswell in Maryland for "a couple of months," after which the couple separated and defendant moved back to Raleigh. Defendant stated that the couple never consummated their marriage. Defendant also said that while she had not filed an action for divorce or annulment in North Carolina, Maryland, or any other jurisdiction, she and Braswell had taken steps to divorce in accordance with their religious beliefs.

Defendant testified that she had met Kareem before the ceremony, but had not known him long. She could not remember Kareem's last name. Defendant stated that Kareem was a Maryland

1. The remaining witnesses testified about other matters relating to the case, none of which are relevant to this appeal.

2. The man's name is spelled "Kerim" throughout the narrative of the trial proceedings that appears in the record. However, the district court and Court of Appeals both spelled the man's name "Kareem." To maintain consistency, we adopt the spelling used by the courts below.

resident whose primary occupation was nonresidential construction. She testified that Kareem was not employed by the Islamic Center of Raleigh and he had not led any of the prayers that she had attended at the center. Defendant also testified that to her knowledge Kareem was not an imam.

After plaintiff rested his case, defendant renewed her motions to dismiss. The district court then rendered an oral order involuntarily dismissing plaintiff's annulment action for insufficiency of the evidence. On 27 July 2010, the district court entered a written order detailing its ruling. The district court noted that the case was governed by the version of section 51-1 of the North Carolina General Statutes that was in effect in 1997. The statute provided:

> The consent of a male and female person who may lawfully marry, presently to take each other as husband and wife, freely, seriously and plainly expressed by each in the presence of the other, and in the presence of an ordained minister of any religious denomination, minister authorized by his church, or of a magistrate, and the consequent declaration by such minister or officer that such persons are husband and wife, shall be a valid and sufficient marriage . . . .

N.C.G.S. § 51-1 (Cum. Supp. 1977).[3] The order also listed several relevant findings of fact that were based on the testimony presented at trial:

14. The Defendant and Mr. Braswell made preparations over a period of weeks for a "marriage" ceremony. Defendant and Mr. Braswell took part in a ceremony with the intent to become husband and wife in early 1997. Defendant and Mr. Braswell took a honeymoon trip to West Virginia after the ceremony and reception. The "marriage" was not consummated either during that trip or subsequent time together in Maryland.

15. Neither Defendant nor Mr. Braswell obtained a marriage license prior to the ceremony.

---

3. In addition to the requirements quoted above, the current version of section 51-1 recognizes marriages that are performed "[i]n accordance with any mode of solemnization recognized by any religious denomination, or federally or State recognized Indian Nation or Tribe." N.C.G.S. § 51-1(2) (2011). In addition to analyzing this case pursuant to the prior version of section 51-1, the district court considered whether the alleged marriage between defendant and Braswell was valid pursuant to the current statute and determined that it was not. This additional analysis is unnecessary to resolve this case; therefore, our review is limited to the district court's application of section 51-1 as it read in 1997.

16. The "marriage" ceremony was conducted by a friend of Mr. Braswell named Kareem who came with Mr. Braswell from Maryland. The Court did not receive evidence of the last name of Kareem and he was not present during the trial. There was insufficient evidence presented for the Court to find that Kareem had the status of either "an ordained minister" or a "minister authorized by his church" as those terms would apply to the Sunni Islamic faith. There was no evidence presented that Kareem was a magistrate.

. . . .

21. With the exception of the Defendant, no one present during the ceremony was in court to testify about the ceremony. There was no evidence presented about Kareem's authorization or qualification to perform the ceremony.

Based on these findings, the district court made several relevant conclusions of law[4]:

5. Because no marriage license was obtained by or issued to Defendant and Khalil Braswell, and there is insufficient evidence that the marriage ceremony met the requirements for a valid marriage, the Court cannot find that Defendant married Mr. Braswell as contemplated by the statute. The purported marriage between Defendant and Mr. Braswell did not require an annulment or divorce or death of either party for termination.

6. Even in a light most favorable to the Plaintiff, the Court cannot find based on the evidence presented that the Defendant married Mr. Braswell, and therefore, the marriage between the parties is not bigamous and an annulment is not warranted as a matter of law. Defendant's Motions to Dismiss Plaintiff's claim for Annulment, made at the close of Plaintiff's evidence, should be granted. The Plaintiff has failed to meet his burden in establishing that his marriage was bigamous. Plaintiff has failed to establish that the Defendant was previously legally married.

7. Plaintiff's Complaint for an Annulment must be denied.

---

4. In its third conclusion of law the district court expressed its "concern[ ] about the unfairness of the Plaintiff's inconsistent positions in the earlier proceedings" as to the validity of his marriage to defendant. Although this conclusion is not relevant to our analysis below, we share the district court's view especially in light of record evidence that suggests plaintiff may have been aware of defendant's relationship with Braswell before plaintiff married defendant.

Plaintiff appealed the district court's order to the Court of Appeals, which reversed and remanded in a divided opinion. *Mussa v. Palmer-Mussa,* 217 N.C. App. 339, 343, 719 S.E.2d 192, 193, 195 (2011). The Court of Appeals majority concluded that the "dispositive issue" on appeal was "whether the defendant's first marriage was void *ab initio* or merely voidable because of the status of the person who performed the ceremony." *Id.* at 341, 719 S.E.2d at 193. Although the majority acknowledged that "the evidence presented at trial supported the trial court's finding that Kareem was not authorized to conduct the marriage," the majority determined that "the court's finding does not support its' [sic] conclusion of law that defendant and Mr. Braswell were not married." *Id.* at 342, 719 S.E.2d at 194. Relying on "[t]he well-established law in North Carolina . . . that only bigamous marriages are void and all other marriages are voidable," *id.* at 342, 719 S.E.2d at 194 (citing *Fulton v. Vickery,* 73 N.C. App. 382, 387, 326 S.E.2d 354, 358, *disc. rev. denied,* 313 N.C. 599, 332 S.E.2d 178 (1985)), the majority concluded that "even though defendant and Mr. Braswell did not have a marriage license and the ceremony failed to meet statutory requirements, the marriage is merely voidable." *Id.* at 342, 719 S.E.2d at 194. Noting defendant's admissions that she had not secured a divorce or annulment from Braswell in North Carolina or any other jurisdiction and that Braswell was still alive when she married plaintiff, the majority concluded that "at the time of defendant's marriage to plaintiff, she was still married to Mr. Braswell and thus any marriage between plaintiff and defendant was bigamous, and consequently void." *Id.* at 342, 719 S.E.2d at 194.

The dissenting judge agreed with the majority that plaintiff had failed to present sufficient evidence that defendant and Braswell had participated in a valid marriage ceremony pursuant to section 51-1. *Id.* at 344, 719 S.E.2d at 195 (Bryant, J., dissenting). Nevertheless, the dissenting judge stated that "the dispositive issue is not whether defendant's first marriage was void *ab initio* or merely voidable but, rather, whether plaintiff met his burden of proof establishing that defendant's first marital union was valid and remained in existence at the time defendant married plaintiff." *Id.* at 344, 719 S.E.2d at 195. Citing the presumption favoring the validity of second marriages, the dissenting judge would have affirmed the district court because "[p]laintiff's direct evidence failed to establish the existence of a valid prior marriage as a result of the early 1997 ceremony." *Id.* at 344, 719 S.E.2d at 195-96 (citing *Kearney v. Thomas,* 225 N.C. 156, 163-64, 33 S.E.2d 871, 876-77 (1945)). Defendant appeals on the basis of the dissenting opinion.

As explained above, after hearing plaintiff's evidence, the trial court allowed defendant's motion to dismiss plaintiff's annulment action for insufficient evidence. Although the district court's order did not reference the applicable procedural rule, Rule 41(b) of the North Carolina Rules of Civil Procedure governs motions that "challenge[ ] the sufficiency of plaintiff's evidence to establish plaintiff's right to relief." *Lumbee River Elec. Membership Corp. v. City of Fayetteville*, 309 N.C. 726, 741, 309 S.E.2d 209, 218 (1983). Pursuant to Rule 41(b), the trial court, "as trier of the facts," "render[ed] judgment on the merits against the plaintiff" and made "findings [of fact] as provided in Rule 52(a)" of the Rules of Civil Procedure. N.C.G.S. § 1A-1, Rule 41(b) (2011). The district court also made conclusions of law, in accordance with Rules 41(b) and 52(a)(2). *See id.*; N.C.G.S. § 1A-1, Rule 52(a)(2) (2011) ("Findings of fact and conclusions of law are necessary on decisions of any motion . . . as provided by Rule 41(b).").

When reviewing a trial court's ruling to dismiss involuntarily an action on the merits pursuant to Rule 41(b), our appellate courts must determine whether the trial court's findings of fact are supported by competent evidence and whether those findings support the court's conclusions of law. *See, e.g., Lumbee River*, 309 N.C. at 740-42, 309 S.E.2d at 218-19. "The well-established rule is that findings of fact by the trial court supported by competent evidence are binding on the appellate courts even if the evidence would support a contrary finding. Conclusions of law are, however, entirely reviewable on appeal." *Scott v. Scott*, 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994) (citation omitted). A trial court's unchallenged findings of fact are "presumed to be supported by competent evidence and [are] binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). If the trial court's uncontested findings of fact support its conclusions of law, we must affirm the trial court's order. *See Carolina Power & Light*, 363 N.C. at 564, 681 S.E.2d at 777.

As a starting point, we observe that plaintiff generally does not contest the district court's findings of fact; therefore, we are bound by them. *See Koufman*, 330 N.C. at 97, 408 S.E.2d at 731. At most, plaintiff raises the issue "[w]hether the trial court erred by concluding that the failure of Defendant and Mr. Braswell to obtain a marriage license was proof of the invalidity of their marriage." In his brief to the Court of Appeals, plaintiff's argument regarding this issue consisted of the bare statement that "[b]ecause a marriage performed without a license is valid, the lack of a license authorizing [Kareem]

to perform the wedding ceremony between Mr. Braswell and Ms. Palmer should not have been a factor in the trial court's conclusion that their marriage was invalid." Standing alone, this statement was insufficient to challenge the trial court's findings of fact. Consequently, the only issue before us is whether the district court's findings support its conclusions of law. *See Carolina Power & Light*, 363 N.C. at 564, 681 S.E.2d at 777.

This Court set forth the appropriate analytical framework for reviewing the instant case almost seventy years ago in *Kearney v. Thomas*, which involved a dispute between Alexander Kearney's second wife and the children of his first wife over two parcels of land that Kearney owned when he died intestate in 1943. 225 N.C. 156, 157-58, 33 S.E.2d 871, 873 (1945). At trial, the children asserted that Kearney's second wife did not have a legal interest in the properties because her marriage to Kearney was bigamous. *Id.* at 158, 33 S.E.2d at 873. On appeal, we affirmed the trial court's judgment following the jury's verdict that Kearney's second wife had a legal interest in the properties, notwithstanding the fact that Kearney was still married to his first wife at the time of his second marriage. *Id.* at 161, 165, 33 S.E.2d at 875, 877. In the process we recognized two principles of law that control here.

First, we stated that when the existence of a second marriage is established before the finder of fact, the second marriage is presumed valid until the *"attacking party"* demonstrates that the second marriage is invalid. *Id.* at 163, 33 S.E.2d at 876 (emphasis added). Second, we noted that the attacking party cannot rely on the presumption favoring the continuation of a prior marriage to satisfy its burden because "[t]he laws of evidence do not recognize a presumption on a presumption." *Id.* Moreover, we observed that the presumption favoring the continuation of the prior marriage, if applicable, must yield to the presumption favoring the second marriage. *Id.* at 164, 33 S.E.2d at 877. As we explained: " 'A second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it. In such case[s] the presumption[s] of innocence and morality prevail over the presumption of the continuance of the first or former marriage.' " *Id.* (quoting Leslie J. Tompkins, *Trial Evidence: The Chamberlayne Handbook* § 416, at 376 (2d ed. 1936)).

Plaintiff argues that, although Kareem was not authorized to perform marriage ceremonies, defendant's marriage to Braswell was valid because it was voidable at the option of defendant or Braswell.

Thus, plaintiff argues that his marriage to defendant is bigamous and void because, as defendant admitted at trial, she had not dissolved her marriage to Braswell and Braswell was alive when she married plaintiff. *See* N.C.G.S. § 51-3 (2011). We disagree. Relying upon our long line of cases discussing the distinction between void and voidable marriages, *see, e.g., Ivery v. Ivery,* 258 N.C. 721, 726-30, 129 S.E.2d 457, 460-63 (1963); *Pridgen v. Pridgen,* 203 N.C. 533, 536-37, 166 S.E. 591, 593 (1932), plaintiff essentially asks us to presume the continuation of defendant's alleged marriage to Braswell as a means of invalidating his marriage to defendant notwithstanding *Kearney's* express rejection of this argument. 225 N.C. at 164, 33 S.E.2d at 877.

As *Kearney* instructs, our analysis must begin by analyzing *plaintiff's marriage* to defendant, not defendant's alleged marriage to Braswell. If sufficient evidence is presented to establish plaintiff's marriage to defendant, that marriage is presumed valid. *Id.* at 163, 33 S.E.2d at 876. The burden then shifts to plaintiff to overcome this presumption. *Plaintiff* must attack the validity of *his marriage,* showing that (1) defendant and Braswell were married lawfully and (2) this union had not been dissolved at the time when plaintiff and defendant were wed. *See id.;* N.C.G.S. § 51-3. Therefore, pursuant to the *Kearney* framework, ascertaining whether defendant's purported marriage to *Braswell* is void or voidable is irrelevant to determining whether plaintiff has met his burden of proof.

We now review the district court's order by applying *Kearney.* As noted previously, the district court found that in prior proceedings it had concluded that plaintiff and defendant were married on 27 November 1997. Plaintiff does not challenge this finding; therefore, it is binding on appeal. *See Koufman,* 330 N.C. at 97, 408 S.E.2d at 731. Even if plaintiff had contested the finding, the record contains ample evidence showing that plaintiff and defendant were married. Defendant stated that she and plaintiff participated in a marriage ceremony officiated by an imam who was authorized to perform marriages pursuant to section 51-1. Both plaintiff and defendant testified that they had obtained a marriage license prior to their wedding. Indeed, "[t]here can be no question about the performance of a second marriage ceremony in the instant case." *Stewart v. Rogers,* 260 N.C. 475, 481, 133 S.E.2d 155, 159 (1963). Further, over a twelve-year period, the couple filed joint tax returns, purchased real property together, and had three children. Plaintiff listed defendant as his wife on his health and dental insurance policies. Consequently, plaintiff's marriage to defendant meets the test of presumptive validity set forth in *Kearney. See* 225 N.C. at 163-64, 33 S.E.2d at 876-77.

As the attacking party, plaintiff then had the burden to demonstrate that his marriage to defendant was bigamous. *See id.* at 163, 33 S.E.2d at 876. But based upon the evidence presented at trial, the district court concluded that defendant and Braswell never were married because Kareem was not authorized to perform marriage ceremonies pursuant to the version of section 51-1 that was in effect in 1997. As we have stated previously, the prior version of section 51-1 required parties participating in a marriage ceremony to "express their solemn intent to marry in the presence of (1) 'an ordained minister of any religious denomination,' or (2) a 'minister authorized by his church' or (3) a 'magistrate.' " *State v. Lynch*, 301 N.C. 479, 487, 272 S.E.2d 349, 354 (1980).

The district court made several uncontested findings of fact regarding Kareem's qualifications to conduct marriages. Most notably, the court found that "[t]here was insufficient evidence presented for [it] to find that Kareem had the status of either 'an ordained minister' or a 'minister authorized by his church' . . . . There was no evidence presented that Kareem was a magistrate." The court also found that "[t]here was no evidence presented about Kareem's authorization or qualification to perform the ceremony." These uncontested findings are binding, *see Koufman*, 330 N.C. at 97, 408 S.E.2d at 731, but we also observe that according to defendant's testimony, Kareem was an out-of-state friend of Braswell's whose primary occupation was construction—he was not an imam. Additionally, in finding of fact fifteen, the court noted that defendant and Braswell did not "obtain[ ] a marriage license prior to the ceremony." Based upon these findings, the court concluded that: "Because no marriage license was obtained by or issued to Defendant and Khalil Braswell, and there is insufficient evidence that the marriage ceremony met the requirements for a valid marriage, the Court cannot find that Defendant married Mr. Braswell as contemplated by the statute." The district court also concluded that plaintiff "failed to meet his burden in establishing that his marriage was bigamous" because he had not shown that defendant "was previously legally married."

In sum, we are bound by the district court's uncontested finding that Kareem was not authorized to perform marriage ceremonies in North Carolina. From this finding it follows that plaintiff failed to show that his marriage to defendant was bigamous because he could not demonstrate that defendant married Braswell during a marriage ceremony that met the requirements of section 51-1. As a result, the

district court properly dismissed plaintiff's annulment action. We conclude that the district court's uncontested findings of fact support its conclusions of law; therefore, we are compelled to affirm the district court's order. *See Carolina Power & Light,* 363 N.C. at 564, 681 S.E.2d at 777. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.