Hendrix v. DeWitt, Inc.

MRS. CAROLYN WALKER HENDRIX, FIFTH WIDOW, CYNTHIA LEE HENDRIX AND MICHAEL LYNN HENDRIX, MINOR CHILDREN, AND MRS. CORDIA FRANCES JARRELL HENDRIX, SIXTH WIDOW OF CHARLES EDWARD HENDRIX, DECEASED, EMPLOYEE-PLAINTIFFS, v. L. G. DeWITT, INC., EMPLOYER, INSURANCE COMPANY OF NORTH AMERICA, CARRIER; DEFENDANTS

No. 7319IC646

(Filed 12 September 1973)

1. Marriage § 2; Master and Servant § 79— presumption of validity of marriage — workmen's compensation — sixth widow entitled to benefits

A second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it; therefore, in a proceeding to determine whether the fifth widow or the sixth widow of deceased employee was entitled to workmen's compensation benefits, the Industrial Commission properly awarded benefits to the sixth widow where the marriage license for deceased's marriage to her was introduced into evidence and where the fifth widow failed to carry the burden of proof that deceased's prior marriage to her had not been dissolved by divorce prior to his subsequent marriage to the sixth widow.

2. Marriage § 2; Trial § 6— stipulation as to divorce — interpretation — effect on validity of marriage

A stipulation between the attorney for deceased employee's sixth widow and the attorney for employer "that there was no divorce of record, and that no one was able to find any record of a divorce" between deceased and his fifth widow is construed by the Court to mean that there was no evidence of record in the county where the Industrial Commission hearing was conducted, and not that there was no divorce of record in any jurisdiction; therefore, the stipulation does not compel the finding that deceased's subsequent marriage to his sixth widow was invalid.

APPEAL by Carolyn Walker Hendrix from opinion and award of the North Carolina Industrial Commission filed 23 February 1973.

This is a proceeding under the Workmen's Compensation Act to determine to whom compensation benefits should be paid on account of the death of Charles Edward Hendrix (Charles), the deceased employee, who died on 30 August 1971 as result of injuries received that day by accident arising out of and in the course of his employment. Awards for the benefit of two minor children are not questioned on this appeal, and the sole question at issue is which of two claimants, Carolyn Walker Hendrix (Carolyn) or Cordia Frances Hendrix (Cordia), is entitled to receive benefits as widow of the deceased employee. At hearings

before Deputy Commissioners evidence was introduced to show the following:

At the time of his death Charles, the deceased employee, was fifty-one years old and had been employed as a long-haul truck driver. He had been married six times, Carolyn being his fifth wife and Cordia his sixth. He was married to Carolyn on 2 October 1963 and they lived together as man and wife until September 1964, when they separated. Thereafter Carolyn and the child born of this marriage lived in the home of her parents in Randolph County, N. C. On 3 December 1968 Charles was married to Cordia in Marlboro County, South Carolina, the marriage license for this marriage being introduced in evidence, and thereafter he and Cordia lived together as man and wife at Route 1, Asheboro, North Carolina, until the date of his death. During this period Charles and Cordia filed joint Federal Income Tax returns, had a joint bank account in the name of Mr. and Mrs. Charles Edward Hendrix, took out life insurance policies in which each named the other as beneficiary, and held themselves out in the community as being man and wife.

Evidence was presented from which the Deputy Commissioner found that Charles's first four marriages were terminated by divorce proceedings, and no exception has been taken to these findings on this appeal. The sole point of contention is whether his fifth marriage, that to Carolyn, had been similarly so terminated. On this point the evidence was as follows:

Carolyn testified:

"No sir, Mr. Hendrix and I were not divorced. He did not get a divorce from me, that I know of. I mean I didn't say he didn't but I have no record or no information about him. Yes, I have searched the records, and they looked, and they couldn't find a record of a divorce. I don't know if he lived outside of Randolph County after we were separated, whether he was out or not, because he drove a truck and I don't know whether he went on long distance trips, so I don't know.

On cross-examination she testified:

"Yes, Charles Hendrix was a truck driver. Well, I guess, he stayed away from the state for extended periods of time after he and I separated. I mean, I knew he drove a long distance truck, but how long he was out of town, I

Hendrix v. DeWitt, Inc.

couldn't tell you. . . . As far as I know I did not have a divorce. . . . Well, yes, I had heard that Charles Hendrix had married Cordia Frances Jarrell Hendrix. . . . I did not receive a divorce, and the records here in Randolph County indicate that there was no divorce granted. Well, there could have been a divorce granted in some other jurisdiction, but Social Security can't find one.

"No, no papers were ever served on me or delivered to me in which he was asking for divorce in this or any other county in the state. The Sheriff has served no process on me at any time."

\*   \*   \*   \*   \*

"Yes, after Mr. Hendrix and I separated I lived in the home of my parents. Well, after my husband and I separated he came by the house several times and I would see him, you know, passing. Yes, he knew where I was. I have been there ever since. Yes, I still reside with my father."

Charles's father testified:

"I do not know whether or not my son, Charles, obtained any divorces in the state of North Carolina from any of the six people who claim to have been married to him. The divorces could have been in any of the 48 states. He traveled from Maine to the State of Washington. He was out of the state and lived in many other states other than North Carolina. I don't know whether he obtained a divorce from Carolyn Hendrix."

Charles's brother testified:

"Yes, I did maintain a close relationship with Charles Edward Hendrix. I knew Cordia Hendrix. I knew about their marriage. Yes, I sure did visit with them during the time they were married from 1968 until the date of my brother's death. Yes, the reputation in the community was that they were married. They lived together as man and wife. Yes, I knew about them going to South Carolina and getting married.

". . . Yes, Carolyn Walker is my brother's former wife. Yes, that marriage was terminated in a divorce. I do not recall when. Yes, it was prior to the marriage of Cordia Frances Jarrell. No sir, I sure don't know where they obtained the divorce.

"Yes, Carolyn Walker Hendrix and my late brother were divorced."

* * * * *

". . . . My brother, Charles, obtained one or two divorces in the State of California and one was obtained in the State of Florida, and one in Randolph County. The one in Randolph County was from . . . the fourth wife. There's been so many, it's hard to keep up with. He lived all over the fifty states about. He stayed gone from Randolph County for an extended period of time ever since he came out of the service in '45."

The Deputy Commissioner found as facts: that neither Charles nor Carolyn ever commenced a divorce proceeding to dissolve their marriage; that they were lawfully married but living apart at the time of Charles's death and Carolyn was so living apart for justifiable cause; and that Charles and Cordia were not lawfully married but were living together at the time of his death. On these findings the Deputy Commissioner entered an award directing payments of benefits to Carolyn as the widow of the deceased employee.

Upon appeal by Cordia to the Full Commission, the opinion and award of the Deputy Commissioner was amended and modified by striking therefrom the findings of fact that neither the deceased nor Carolyn ever commenced a divorce proceeding to dissolve their marriage and that they were lawfully married at the time of his death, the Full Commission finding as a fact on the contrary that the deceased employee and Cordia were legally married and were living together as man and wife at the time of his death. On the revised findings the Full Commission awarded benefits to Cordia as the widow of the deceased employee rather than to Carolyn. To these findings and award of the Full Commission, Carolyn duly excepted and appealed.

*H. Wade Yates for appellant, Carolyn Walker Hendrix.*

*Bell, Ogburn & Redding by J. Howard Redding for appellee, Cordia Frances Hendrix.*

PARKER, Judge.

[1] The evidence before the Industrial Commission as to whether the deceased employee's prior marriage to Carolyn had been dissolved by divorce prior to his subsequent marriage to

Cordia was at best contradictory and inconclusive. Upon evidence no more convincing, our Supreme Court in *Chalmers v. Womack*, 269 N.C. 433, 152 S.E. 2d 505, held that the issue as to the validity of a subsequent marriage was properly submitted to the finders of the fact, in that case a jury, and found no error in a judgment entered upon a verdict finding the subsequent marriage valid. The opinion in that case quoted with approval from the decision in *Kearney v. Thomas*, 225 N.C. 156, 33 S.E. 2d 871, as follows:

> " ' "A second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it. In such case the presumption of innocence and morality prevail over the presumption of the continuance of the first or former marriage." . . . (I)t is always for the jury where the demand is for an affirmative finding in favor of the party having the burden, even though the evidence may be uncontradicted. . . . Moreover, proof of the second marriage adduced by the defendant, if sufficient to establish it before the jury, raises a presumption of its validity, upon which property rights growing out of its validity must be based.' "

In the present case, the subsequent marriage between the deceased employee and Cordia being shown, the burden fell upon Carolyn to prove its invalidity. The Industrial Commission, as finder of the facts, has found in effect that Carolyn failed to carry that burden, and this finding will not be disturbed on this appeal.

Appellant cites and relies upon the case of *Williams v. Williams*, 254 N.C. 729, 120 S.E. 2d 68, which was decided by a divided court with three Justices dissenting. Without attempting to distinguish that case, it is our opinion that the present appeal is controlled by the more recent decision in *Chalmers v. Womack, supra*, which was decided by a unanimous court and which is in accord with substantial authority from other jurisdictions. See: Annotation, 14 A.L.R. 2d 7.

[2]    The record contains the statement that the attorney for Cordia and the attorney for the employer during a hearing before one of the Deputy Commissioners stipulated "that there was no divorce of record, and that no one was able to find any record of a divorce." In the context in which this stipulation was made, we think it is clear that it meant there was no evidence of record in Randolph County, where the hearing was

conducted, and not that there was no divorce of record in any jurisdiction. In our opinion the stipulation does not, as appellant contends, compel the finding that the subsequent marriage to Cordia was invalid.

The opinion and award of the Industrial Commission is

Affirmed.

Chief Judge BROCK and Judge MORRIS concur.