An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-436

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

OCTAVIA SCOTT,
     Plaintiff,

v.                                  Union County
                                    Nos. 12 CVD 2045, 07 CVD 1844

MAURICE MURRAY,
     Defendant.

Appeal by defendant from order entered 13 December 2012 by Judge Hunt Gwyn in Union County District Court. Heard in the Court of Appeals 26 September 2013.

> *Vann Law Firm, P.A., by Christopher M. Vann, for plaintiff-appellee.*

> *Krusch & Sellers, P.A., by Rebecca K. Watts, for defendant-appellant.*

BRYANT, Judge.

Where the trial court's findings of facts do not support its conclusion that Scott has rebutted the presumption that Murray's first marriage ended with a valid divorce, we reverse the trial court's order as it relates to the annulment of Scott's marriage for bigamy. Likewise, we reverse the trial court's order granting Scott reformation of deeds to real

property on the basis of fraud. As it appears marital property was acquired during Scott and Murray's marriage, we reverse the trial court's dismissal of Murray's equitable distribution claim.

On 28 March 2007, a verified complaint filed in Mecklenburg County District Court by Maurice Murray raised issues of custody, child support, and equitable distribution of property acquired during the marriage between Murray and Octavia Scott[1]. On 1 May 2007, Scott filed an answer and counterclaims for custody and support, post-separation support and alimony, attorney fees, and equitable distribution.

On 13 June 2007, the Mecklenburg County District Court entered an order pursuant to Scott's motion and amended motion changing venue to Union County.

In orders filed 16 November 2007 and 25 July 2008, the Union County District Court addressed issues of permanent custody and child support, respectively.

Four years later, on 17 July 2012, Scott filed a complaint in Union County District Court seeking an annulment of the

---

[1] In Murray's custody, child support, and equitable distribution complaint filed in Mecklenburg County on 28 March 2007, the defendant is listed as Octavia Murray; however, in subsequent court documents and the order from which the appeal is taken, this party is referred to as Octavia Scott. For purposes of consistency, we refer to Octavia Scott throughout the opinion.

marriage and deed reformation. She alleged that she purchased two properties during the purported marriage and allowed Murray's name on the deeds only because of his status as spouse.

The outstanding matters were heard in Union County District Court during the term commencing 1 October 2012 before the Honorable Hunt Gwyn, Judge presiding. On 13 December 2012, the trial court entered an Order for Annulment, Deed Reformation, Attorney's Fees, and Dismissal of Equitable Distribution.[2]

In its order, the trial court found that Scott and Murray entered into a purported marriage on 13 February 2003; one child was born of the union. On 9 March 2007, the parties separated. The court found that on the parties' marriage application, Murray answered "no" to the question "have you ever been married before" but during the hearing before the District Court, testified that he knew the answer to be "yes." Murray testified that he answered "no" for "expediency" so that he could relocate

---

[2] The 13 December 2012 order for annulment, deed reformation, attorney's fees, and dismissal of equitable distribution lists two docket numbers, 12 CVD 2045 and 07 CVD 1844. Docket number 12 CVD 2045 relates to Scott's complaint seeking annulment and deed reformation. Docket number 07 CVD 1844 relates to Murray's verified complaint seeking custody, child support, and equitable distribution after venue in the action was changed to Union County. Because the 13 December 2012 order from which the appeal arises refers to Scott as plaintiff and Murray as defendant, we will adhere to this party designation where appropriate.

from a halfway house in Philadelphia to the Union County / Charlotte area. In January 2009, Scott contacted a woman whom she came to believe may have been previously married to Murray, Alice Bowen. Alice Bowen confirmed that she had been married to Murray in the early 1980s. The trial court found that Scott filed a discovery request and subsequent motion to compel Murray to produce proof of divorce; and that Murray failed to produce a divorce decree or other proof of divorce.[3] As to the issue of Murray's credibility, the trial court also found that Murray admitted to committing tax fraud and mortgage fraud (at trial, Murray responded to questions regarding a failure to report income for tax purposes and selling a residential property damaged by fire without disclosing the fire damage); that he had been convicted under an alias; and that he was untruthful to Scott about his criminal convictions. The trial court concluded that Scott rebutted the presumption that there existed a valid divorce between Murray and Bowden and that "there has not been a valid entry of divorce as between [Murray] and Ms. Bowen." On these grounds, the trial court declared the marriage between Scott and Murray annulled and void *ab initio*. Further, the trial court concluded "[t]hat the deeds for the real properties

---

[3] *See infra* footnote 4.

acquired during the marriage were executed because [Scott] relied upon and was deceived [by Murray's] misrepresentation. . . . [T]hus, [Scott] [was] entitled to a judgment reforming the deeds so as to remove [Murray]'s name as a grantee." The trial court ordered that Murray execute warranty deeds transferring to Scott his interest in two parcels of real property acquired during the purported marriage. The court also concluded that as no marital property was acquired by the parties, there was no valid claim for equitable distribution; Murray's claim for equitable distribution was therefore dismissed. Scott's request for attorney fees was also denied. Murray appeals.[4]

_____

On appeal, Murray raises the following issues: whether the trial court erred in (I) determining the presumption of marriage was rebutted and annulling the marriage; (II) reforming the deeds to real property; and (III) dismissing Murray's equitable distribution claim.

_____

[4] The trial court's 13 December 2012 order specifically addresses the issues raised in Union County docket numbers 12 CVD 2045 and 07 CVD 1844. However, in response to the initial complaint under docket number 07 CVD 1844, Scott filed an answer and counterclaims. Scott's counterclaims raised issues of child custody and support, post-separation support, alimony, attorney fees, and equitable distribution. The trial court's 13 December 2012 order fails to address the issues of post-separation support and alimony.

*I*

Murray first argues the trial court erred in determining that Scott rebutted the presumption that her marriage to Murray was valid and in annulling the marriage. Specifically, Murray argues that Scott failed to meet the burden of proof necessary to rebut the presumption of a valid marriage and that the trial court's findings of fact do not support its conclusion that the presumption of marriage was rebutted. We agree.

Initially, we note that Murray does not challenge the trial court's findings of fact but rather whether those finding support its conclusion of law. Thus, even presuming the lowest standard of proof is applicable to the evidence supporting the trial court's findings of fact, the question before us concerns whether those findings of fact support the trial court's conclusions of law. *See Mussa v. Palmer-Mussa*, 366 N.C. 185, 191, 731 S.E.2d 404, 409 (2012) (In reviewing a trial court order concluding that the plaintiff failed to meet his burden of proof to establish that his marriage was void on grounds of bigamy, our Supreme Court noted that "[a] trial court's unchallenged findings of fact are presumed to be supported by competent evidence and [are] binding on appeal. If the trial court's uncontested findings of fact support its conclusions of

law, we must affirm the trial court's order." (citations and quotations omitted)).

"Upon proof that a marriage ceremony took place, it will be presumed that it was legally performed and resulted in a valid marriage." *Kearney v. Thomas*, 225 N.C. 156, 163, 33 S.E.2d 871, 876 (1945) (citation omitted); *see also Parker v. Parker*, 46 N.C. App. 254, 256-57, 265 S.E.2d 237, 239 (1980) ("It is presumed that a marriage entered into in another State is valid under the laws of that State in the absence of contrary evidence . . . ." (citation omitted)). "A second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it. In such case the presumption of innocence and morality prevail over the presumption of the continuance of the first or former marriage." *Kearney*, 225 N.C. at 164, 33 S.E.2d at 877 (citation omitted), cited by *Mussa*, 366 N.C. at 190, 731 S.E.2d at 408; *see also Denson v. Grading Co.*, 28 N.C. App. 129, 131, 220 S.E.2d 217, 219 (1975) ("The decided weight of authority . . . is that when two marriages of the same person are shown, the second marriage is presumed to be valid; that such presumption is stronger than or overcomes the presumption of the continuance of the first marriage, so that a person who attacks a second marriage has the

burden of producing evidence of its invalidity. When both parties to the first marriage are shown to be living at the time of the second marriage, it is presumed in favor of the second marriage that the first was dissolved by divorce. These presumptions arise, it is said, because the law presumes morality and legitimacy, not immorality and bastardy." (citation omitted)).

Because Scott seeks to annul her marriage to Murray based on the allegation that Murray never divorced his first wife, the burden of proof lies with Scott. *See Kearney*, 225 N.C. at 164, 33 S.E.2d at 877.

In *Parker*, 46 N.C. App. 254, 265 S.E.2d 237, this Court found error in a trial court's ruling invalidating the marriage between the plaintiff and the defendant despite evidence indicating that the plaintiff and the defendant had not participated in a marriage ceremony following the plaintiff's divorce from her first husband. *Id.* at 257, 265 S.E.2d at 239. Prior to moving to North Carolina and filing a divorce action, the plaintiff and the defendant lived in South Carolina as wife and husband. During the course of their marriage, the plaintiff discovered that her first husband failed to file divorce papers and that she remained legally married to him. Under the laws of

South Carolina, "[a]ll marriages contracted while either of the parties has a former wife or husband living shall be void." *Id.* at 257, 265 S.E.2d at 239 (citing S.C.Code ' 20-1-80). The plaintiff filed divorce papers ending her first marriage but did not participate in a subsequent marriage ceremony with the defendant. *Id.* However, South Carolina law recognizes common law marriage where the parties agree to assume the relationship of husband and wife. *Id.* at 258, 265 S.E.2d at 240. Furthermore, "[t]he agreement need not be express; it may be adduced from circumstances . . . ." *Id.* (citation omitted). The plaintiff's unrebutted evidence indicated that she and the defendant lived together as man and wife for six weeks in South Carolina following the plaintiff's divorce from her first husband. Therefore, this Court reversed the conclusion there was no valid marriage between the plaintiff and the defendant and remanded the matter for further proceedings. *Compare Ivory v. Greer Bros., Inc.*, 45 N.C. App. 455, 461, 263 S.E.2d 290, 294 (1980) (affirming the opinion and award of the Industrial Commission which concluded the plaintiff's marriage to the decedent was a nullity where the findings of fact, supported by competent evidence, established that the plaintiff's marriage to

the decedent occurred prior to the decedent's divorce from his first wife).

In *Denson*, 28 N.C. App. 129, 220 S.E.2d 217, two women claimed entitlement to receive widow benefits.  The first wife sought to invalidate the second marriage on the basis that no divorce decree had been filed in the first marriage.  The Court, acknowledging that the second marriage had been duly proven by the record, noted that the burden of proof to invalidate the second marriage rested with the moving spouse, there, the first wife.  *Id.* at 131, 220 S.E.2d at 219.  The first wife established the existence of the first marriage and testified that she had not divorced nor received notice of divorce from the husband.  *Id.* at 131, 220 S.E.2d at 219. "There was no other attempt to prove there had been no divorce."  *Id.*  This Court acknowledged that the first wife failed to overcome the presumption of validity afforded her husband's second marriage. "The mere proof that one party had not obtained a divorce is not sufficient to overcome the presumption, since the other party might have obtained a divorce." *Id.*

In *Hendrix v. DeWitt, Inc.*, 19 N.C. App. 327, 198 S.E.2d 748 (1973), a matter appealed to this Court from our Industrial Commission, we considered whether the fifth wife of a decedent

met her burden of proof to establish that her marriage never ended in divorce and thus, the decedent's marriage to his sixth wife was void for bigamy. The record on appeal reflected that the decedent had been employed as a long-haul truck driver who spent substantial periods of time outside of North Carolina. The attorney for the decedent's employer and the attorney for the sixth wife stipulated that no one was able to find any record of a divorce in Randolph County, where the hearing was conducted. "In our opinion the stipulation does not, as appellant contends, compel the finding that the subsequent marriage to [the sixth wife] was invalid." *Id.* at 332, 198 S.E.2d at 751.

In the instant case, the trial court made the following pertinent, unchallenged findings of fact:

> 2. That [Scott] and [Murray] entered into a purported marriage on or about the 13th day of February 2003 in Pennsylvania.
>
> . . .
>
> 5. That on the parties' marriage application, [Murray] answered *no* to the question *have you ever been married before* and that [Scott] relied upon [Murray's] answer.
>
> . . .

7. That [Murray] testified that his answer *no* to a question that he knew the answer to was *yes* was done for "expediency" and some perceived urgency so that he could relocate from a halfway house in Philadelphia to the Union County/Charlotte area, but despite the testimony as to that urgency, [Murray] remained in Pennsylvania for several months.

8. That in January 2009, [Scott] became suspicious as to whether or not [Murray] had in fact been married to anyone else . . . . [Scott] learned that in fact [Murray] had been married in the early 1980's to a woman by the name of Alice Bowen.

9. That as a result of [Scott's] suspicions that there was a marriage that predated her own, she filed a discovery request that requested [Murray] to produce proof of a divorce decree.[5]

10. [Murray] never complied with that discovery request.

11. [Scott] had to file a motion to compel, however, [Murray] never responded satisfactorily to [Scott's] motion to compel. This court never heard [Scott's] motion to compel as to that issue.

. . .

---

[5] Notwithstanding the trial court's finding of fact, discovery documents in the record reveal Scott's discovery request was for financial information only and contained no discovery request for proof of divorce. It appears that in making this finding, the trial court relied solely on Scott's testimony given during the 1 October 2012 hearing.

13. Both parties searched for a divorce decree in Onslow County, North Carolina. No divorce decree was found in Onslow County. [Murray] suggested that the Onslow County Clerk's office now has no record of such a divorce because it was destroyed by either a flood or a fire.

14. *That [Murray], despite having roughly ten months to do so, has searched no other counties for a copy of the divorce decree. He has presented no evidence of any divorce decree being obtained to Ms. Bowen nor any other proof of such a divorce ever occurring.*

. . .

16. That [Scott] has rebutted the presumption that there is a valid divorce between [Murray] and Ms. Bowen and finds that there has not been a valid entry of a divorce decree as between [Murray] and Ms. Bowen.[6]

The trial court's unchallenged finding that Scott and Murray entered into a purported marriage on 13 February 2003 in Pennsylvania confers upon their marriage a presumption of validity. *See Mussa*, 366 N.C. at 193, 731 S.E.2d at 410 ("[T]he district court found that in prior proceedings it had concluded that [the] plaintiff and [the] defendant were married on 27

---

[6] We note the absence of any finding by the trial court regarding Murray's unnumbered exhibit, an affidavit by Alice Bowen (currently, Alice Scrantz) stating that she and Murray divorced in 1983.

November 1997. Plaintiff does not challenge this finding; therefore, it is binding on appeal."); *see also Denson*, 28 N.C. App. at 131, 220 S.E.2d at 219.

The trial court found that "[b]oth parties searched for a divorce decree in Onslow County, North Carolina. No divorce decree was found in Onslow County." We further note the trial court's finding "[t]hat [Murray], despite having roughly ten months to do so, has searched no other counties for a copy of the divorce decree. He has presented no evidence of any divorce decree being obtained to Ms. Bowen nor any other proof of such a divorce ever occurring." These findings, which place the burden of proof on Murray, indicate the trial court's belief that Scott met the minimum criteria to support a finding that no divorce decree was entered in Murray's first marriage. We do not believe the trial court's findings of fact support this belief.

This Court's holding in *Hendrix*, 19 N.C. App. 327, 198 S.E.2d 748, informs us that the inability to produce a divorce decree after a records search in one county is insufficient to support a finding that no divorce decree was entered and thus, insufficient to rebut the presumption of validity afforded a subsequent marriage. *See id.* at 331-32, 198 S.E.2d at 751. On this point, the evidence presented before the trial court was

that Murray married Bowen in 1981 while both were Marines stationed at Camp LeJune, in Onslow County, and that Bowen was transferred to another base prior to any communication regarding a divorce proceeding. Murray testified that he did not know to what base Bowen was transferred. Even if the standard of proof required under these circumstances is preponderance of the evidence, the trial court's finding that no divorce decree was found upon a records search in Onslow County fails to support the conclusion "[t]hat [Scott] has rebutted the presumption that there is a valid divorce between [Murray] and Ms. Bowen and . . . that there has not been a valid entry of a divorce decree as between [Murray] and Ms. Bowen." *See id.*

As there are no other findings that would support grounds for rebutting the presumption of validity afforded the marriage of Scott and Murray, the trial court erred in concluding that the presumption of validity has been rebutted. Accordingly, the order granting the annulment of the marriage of Scott and Murray is reversed.

*II*

Murray argues that the trial court erred in reforming the deeds to real property. We agree.

"An action to reform an instrument usually arises in cases in which there has been mutual mistake of the parties or mistake by one of the parties and fraud by the other.  All the essential elements for reformation must be proved by clear, strong, and convincing evidence."  *Dorsey v. Dorsey*, 306 N.C. 545, 547, 293 S.E.2d 777, 779 (1982) (citations omitted) (considering whether the plaintiff made a prima facie case for reformation of a deed to real property held as tenants by the entirety where he alleged that his wife's previous marriage had ended with the filing of a divorce decree following her marriage to the plaintiff).

> While fraud has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition, the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568-69, 374 S.E.2d 385, 391 (1988) (citation omitted).

In pertinent part, the trial court made the following unchallenged findings of fact:

> 17. That on the 24th day of October, 2003 [Scott] purchased realty located at 3900

Courtland Drive, Charlotte, NC 28212 and on the 24th day of June 2005 [Scott] also purchased realty located at 3323 Sandalwood Drive, Waxhaw, NC 28173.

18. That the deed to said properties are titled to [Scott] and [Murray].

19. That [Scott] did not want [Murray's] name on the deed to the property located at 3900 Courtland Drive, Charlotte NC 28212 because [Murray] had contributed no monies towards the purchase of said property. However, [Scott] testified that she was advised by her attorney, at the time, that because [Murray] was her spouse, it was necessary to put his name on the deed.

20. That [Murray] intended to deceive and influence the acts of [Scott].

21. That [Scott] relied upon [Murray's] misrepresentation and was actually deceived as evidenced by the fact that she had him named as her spouse, a tenant by the entirety of the residential realties.

The trial court stated the following conclusion:

3. That the deeds for the real properties acquired during the marriage were executed because [Scott] relied upon and was deceived [by] [Murray's] misrepresentation. [Murray] intended to deceive and influence the acts of [Scott]; and thus, [Scott] is entitled to a judgment reforming the deeds so as to remove [Murray's] name as a grantee.

The trial court's conclusion that Scott is entitled to reformation of the deeds to the real property she purchased appears to be predicated solely on the trial court's conclusion

that Murray intended to deceive Scott as to his status as Scott's spouse, where Murray remained legally married to a prior spouse.  However, as discussed in issue I, Scott has not met the burden of proof to rebut the presumption of validity afforded her marriage to Murray.  Therefore, the trial court's findings of fact indicating that Murray deceived and influenced Scott by representing himself as her spouse are unsupported.  As this appears to be the sole basis for the trial court's conclusion that Scott is entitled to reformation of the deeds to real property purchased during the course of her marriage to Murray and held as tenants by the entirety, we reverse the trial court's order as to reformation of the deeds.

### III

Lastly, Murray argues that the trial court erred as a matter of law in dismissing his equitable distribution claim. We agree.

"'Marital property' means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned[.]"  N.C. Gen. Stat. § 50-20(b)(1) (2013).

The trial court made the following pertinent, unchallenged findings of fact:

> 3. That [Scott] and [Murray] entered into a purported marriage on or about the 13th day of February 2003 in Pennsylvania.
>
> . . .
>
> 17. That on the 24th day of October, 2003 [Scott] purchased realty located at 3900 Courtland Drive, Charlotte, NC 28212 and on the 24th day of June 2005 [Scott] also purchased realty located at 3323 Sandalwood Drive, Waxhaw, NC 28173.
>
> 18. That the deed to said properties are titled to [Scott] and [Murray].
>
> . . .
>
> 21. That [Scott] . . . had [Murray] named as her spouse, a tenant by the entirety of the residential realties.

The trial court concluded "[t]hat no valid claim for equitable distribution exists between the parties as there was no marital property acquired."

As discussed in Issue I, the trial court's findings of fact are insufficient to rebut the presumption of validity afforded the marriage between Scott and Murray. Therefore, as real property was purchased and acquired as tenants by the entirety during the course of the marriage between Scott and Murray, it

appears at this stage, that it was marital property and therefore, subject to equitable distribution. *See id.* Accordingly, we reverse the trial court's order in as much as it dismisses Murray's equitable distribution claim on the basis that no marital property was acquired and remand for further proceedings.

Reversed and remanded.


Judges HUNTER, Robert C., and STEELMAN concur.

Report per Rule 30(e).